Helen BROOMS, Plaintiff–Appellant, Cross–Appellee,

v.

REGAL TUBE COMPANY, Copperweld Corporation and Charles Gustafson, Defendants–Appellees, Cross–Appellants.

Nos. 87–2362, 87–2522, 87–2558, 87–2559.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1988.

Decided Aug. 4, 1989.

---

414

Robin B. Potter, Potter & Schaffner, Chicago, Ill., for plaintiff-appellant, cross-appellee in Nos. 87–2362 and 87–2522.

Patricia A. Brandin, Seyfarth Shaw Fairweather & Geraldson, J. Stephen Poor, Chicago, Ill., John M. Kennelly, John M. Kennelly, P.C., Oak Park, Ill., for defendants-appellees, cross-appellants in Nos. 87–2362 and 87–2522.

Charles A. Shanor, Equal Employment Opportunity Com'n, Washington, D.C., for amicus curiae.

Robin B. Potter, Potter & Schaffner, Chicago, Ill., Charles Pressman, Bertrand A. Rice, Chicago, Ill., John M. Kennelly, P.C., Oak Park, Ill., for plaintiff-appellant, cross-appellee in No. 87–2558.

Patricia A. Brandin, Seyfarth Shaw, Fairweather & Geraldson, J. Stephen Poor, Robin B. Potter, Potter & Schaffner, Charles Pressman, Bertrand A. Rice, Chicago, Ill., John M. Kennelly, Oak Park, Ill.,

for plaintiff-appellant, cross-appellee in No. 87–2559.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Helen Brooms sued Charles Gustafson, Regal Tube Company, and Copperweld Corporation, for subjecting her to racial and sexual harassment. After a trial, a jury returned a verdict in favor of the defendants upon Brooms' section 1981 racial harassment claims, and the district court found in favor of Brooms upon her Title VII sexual harassment claims. Brooms, Regal Tube, and Copperweld all appeal, alleging that numerous errors were committed resulting in their respective adverse judgments. We affirm in part and reverse and remand in part.

## I. BACKGROUND

In April of 1983, Regal Tube Company, at the time a wholly owned subsidiary of Copperweld Corporation, hired Helen Brooms, a thirty-six year old black female, as its industrial nurse. Regal's Assistant Manager, John Oberlin, directly supervised Brooms as she rendered first aid and performed various medically-related clerical tasks. However, Brooms also worked with Regal's Human Resource Manager, Charles Gustafson, who supervised Brooms, Oberlin, and the department's secretary, Sandra Mara.

During the course of Brooms' sixteen-month employment at Regal, Gustafson made numerous explicit racial and sexual remarks to Brooms, apparently designed to elicit particular reactions. These remarks varied in offensiveness as well as in the context in which they arose.[1] She rejected all of Gustafson's sexual advances and either protested or attempted to ignore both his racial and sexual commentary. Nevertheless, Gustafson's improper conduct continued.

On December 12, 1983, the Illinois Department of Human Rights assisted Brooms in drafting a letter to Francis Sazama, Regal's Vice President and General Manager. In that letter, she complained of sexual harassment by Gustafson which had caused her undue personal hardship. She sent a copy of the letter to Wayne Nelson, Copperweld's Vice President of Human Resources, and to her immediate supervisor, John Oberlin.

Upon receiving the letter, Nelson discussed its contents with Sazama. Thereafter, they hired William Sullivan, an attorney, to act as an independent investigator to determine whether Brooms' allegations had any substance. Sullivan interviewed Brooms and Gustafson and reported to Nelson and Sazama the alleged incidents of misconduct, Brooms' response to the incidents, and her fears of retaliation. He also stated that he found Brooms to be honest and straightforward.

However, before Sazama received Sullivan's report, Sazama met with Brooms and asked her what she wanted. She told him that she wanted an apology from the company and from Gustafson and that she wanted the offensive remarks to end. Immediately thereafter, Sazama met privately with Gustafson, made him apologize to Brooms, postponed Gustafson's merit salary increase and told him that if he did such a thing again he would be fired. Nevertheless, after Sazama left, Gustafson immediately told Brooms that he was not afraid of Sazama.

---

1. Most of the incidents involved Gustafson's use of racial slurs or a combination of racial slurs and sexual innuendo in the office or at business-related social functions, such as the company picnic. However, in November of 1983, when Brooms and Gustafson attended a conference in Pittsburgh, Gustafson directly propositioned Brooms which she declined. While she likewise had rejected all prior advances and ignored or protested all offensive comments, the Pittsburgh incident resulted in an emotional response which was accompanied by physical illness, requiring medical treatment.

After returning from the Pittsburgh trip, Brooms told a coworker, Sandra Mara, and her immediate supervisor, John Oberlin, about the Pittsburgh incident. To end Gustafson's offensive behavior, Oberlin advised Brooms to tell Gustafson that her husband had given her herpes and to tape-record her conversations with Gustafson. Brooms rejected this advice.

For the next few weeks, Gustafson avoided any unnecessary contact with Brooms. However, in February of 1984, Gustafson began to renew his sexual and racial comments. A month later, in a particularly offensive incident, Gustafson showed Brooms a pornographic photograph depicting an interracial act of sodomy and told her that the photograph showed the "talent" of a black woman. He stated that she was hired for the purpose indicated in the photograph. Thereafter, Brooms filed her first charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. Copperweld, Regal, and Gustafson received notice of the complaint.

Brooms continued to work at Regal and on July 5, 1984, entered Gustafson's office to get his signature upon some medical forms. At that time, he showed her one of several photocopies of a racist pornographic picture involving bestiality. Gustafson threatened that the picture depicted how she "was going to end up." As she attempted to grab one of the copies, Gustafson grabbed her arm and threatened to kill her if she moved. She threw coffee on him and ran away, screaming and falling down a flight of stairs as she fled.

Brooms did not return to work at Regal, but continued on Regal's payroll until September 5, 1984. She received disability compensation for two months thereafter. Following Brooms' departure, Gustafson and his superiors determined that he would no longer be effective at Regal. On August 27, 1984, he tendered his resignation.

Brooms engaged in various employment between July of 1984 and her trial in July of 1987. However, after leaving Regal, she purportedly suffered a severe debilitating depression caused by Gustafson's repeated instances of abuse. Following psychiatric therapy, she now has recovered to a point where she can re-enter the workplace on a more permanent basis.

On February 20, 1985, Brooms filed a suit in district court, charging Gustafson, Regal, and Copperweld with harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, racial discrimination in employment in violation of section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the state law torts of intentional infliction of emotional distress and negligence. On February 26, 1986, the district court dismissed the pendent state claims as precluded by the exclusivity provisions of the Illinois Workers' Compensation Act.

The section 1981 claim was tried to a jury which found that Brooms did not prove by a preponderance of the evidence that defendant Gustafson "had engaged in racial harassment which was so excessive that it altered the condition of plaintiff's employment and created an abusive working environment." Simultaneously, Brooms' Title VII claims were tried to the bench to determine whether she suffered sexual harassment on her job which was so extensive that it constituted a violation of Title VII and whether Regal and Gustafson's actions were the result of her decision to file discrimination charges against them with the Illinois Department of Human Rights and thus constituted illegal retaliation within the meaning of 42 U.S.C. § 2000e–3(a). The district court concluded that Brooms could prove that she had suffered sexual harassment, but could not prove that Regal and Gustafson had engaged in illegal retaliatory activity.

In her complaint, Brooms only requested compensatory and punitive damages that would have been available had she prevailed under her section 1981 claim. Nevertheless, despite her pleading deficiencies, the district court found that the record indicated that Brooms had been "constructively discharged" and thus was entitled to back pay. The district court awarded her $43,319.00, her back pay of $60,600.00 less $17,281.00 which she earned during the period. The district court denied her subsequent post-trial motion for front pay.

## II. DISCUSSION

Brooms, Regal, and Copperweld appeal the decisions rendered below. Because each party raises numerous issues, we address their contentions separately.

### A. *Copperweld and Regal's Appeal*

Copperweld and Regal challenge the district court's entry of judgment in favor of Brooms on her Title VII sexual harassment claim. They contend that the district court improperly employed a subjective standard, rather than an objective standard, when deciding whether Brooms was subjected to a sex-based hostile work environment. Copperweld and Regal also contend that the district court improperly imputed Gustafson's action to them under a "strict liability" theory.

The corporate defendants also challenge the district court's decision to allow the introduction into evidence of testimony and correspondence relating to the investigation conducted by William Sullivan, Jr., an attorney hired by Regal following Brooms' initial allegations of harassment. Finally, they challenge the district court's finding that Brooms was "constructively discharged" and thus entitled to a back pay award.

### 1. *Standard for Determining Liability*

■ To maintain an action for sexual harassment under Title VII, a plaintiff must demonstrate that he or she has experienced "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature," 29 C.F.R. § 1604.11(a) *et seq.*, which was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (citation omitted); *see also Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 213 (7th Cir.1986). In the past, we have required district courts to ask whether "the demeaning conduct and sexual stereotyping cause[d] such anxiety and debilitation to the plaintiff that working conditions were 'poisoned' within the meaning of Title VII." *Scott,* 798 F.2d at 213. Only if a plaintiff can demonstrate such conditions may he or she prevail upon his or her Title VII claim.

■ In *Scott,* we did not explicitly address the issue whether the existence of a hostile work environment should be judged pursuant to a subjective or an objective standard. In that case, the district court had adopted an objective test, stating:

It may be that some of [the plaintiff]'s co-workers behaved improperly and that she felt uncomfortable. Nevertheless, "whether an employee is sexually harassed is generally an objective determination and ... the focus of sexual harassment should be upon the defendant's conduct, not the plaintiff's perception or reaction to the defendant's conduct."

*Scott v. Sears, Roebuck & Co.,* 605 F.Supp. 1047, 1056 (N.D.Ill.1985) (quoting *Jennings v. D.H.L. Airlines,* 101 F.R.D. 549, 551 (N.D.Ill.1984)).

In affirming the district court's holding that summary judgment was appropriate, we never discussed the lower court's use of an objective standard. We merely noted that the conduct of which the plaintiff complained was not "so pervasive or psychologically debilitating that [it] affected [the plaintiff]'s ability to perform on the job" and that the conduct was "too isolated and lacking the repetitive and debilitating effect necessary to maintain a hostile work environment claim." 798 F.2d at 214. In effect, we performed a combination of subjective and objective inquiries without so stating.

Apparently, the use of a combination of objective and subjective inquiries has been expressly adopted by at least one court as the proper test for determining whether questionable conduct rises to the level of sexual harassment. In *Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), the Sixth Circuit Court of Appeals adopted a test which requires plaintiffs to prove "that the defendant's conduct would have interfered with a reasonable individual's work performance and would have affected seriously the psychological well-being of a reasonable employee" and also "to demonstrate that she was actually offended by the defendant's conduct and that she suffered some degree of injury as a result of the abusive and

hostile work environment." *Id.* at 620. The court further stated that:

> a proper assessment or evaluation of an employment environment that gives rise to a sexual harassment claim would invite consideration of such objective and subjective factors as the nature of the alleged harassment, the background and experience of the plaintiff, her coworkers, and supervisors, the totality of the physical environment of the plaintiff's work area, the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs, coupled with the reasonable expectation of the plaintiff upon voluntarily entering that environment.

*Id.* The court went on to note that its approach was not inconsistent with the Equal Employment Opportunity Commission's guidelines "which emphasize the individual nature of a probative inquiry" while considering the totality of all available facts and circumstances. *Id.* at 621 n. 5 (discussing 29 C.F.R. § 1604.11(b)).

We agree with the Sixth Circuit's analysis and our earlier intimations in *Scott* that a district court must employ a dual standard when evaluating a Title VII sexual harassment claim, considering the likely effect of a defendant's conduct upon a reasonable person's ability to perform his or her work and upon his or her well-being, as well as the actual effect upon the particular plaintiff bringing the claim. Only if the court concludes that the conduct would adversely affect the work performance and the well-being of both a reasonable person and the particular plaintiff bringing the action may it find that the defendant has violated the plaintiff's rights under Title VII.

The parties evidently do not dispute that a court should employ a combination of subjective and objective standards to determine whether a plaintiff has a valid Title VII sexual harassment claim, although Brooms offers token resistance to the adoption of any test including an objective inquiry. Instead, both sides argue over whether the district court below employed such standards in reaching its conclusion that Brooms had proved sexual harassment under Title VII. Thus, we now must decide whether the district court performed the requisite analysis or instead improperly focused solely upon the actual effect of Gustafson's conduct upon Brooms as Copperweld and Regal contend.

Copperweld and Regal assert that the district court's findings indicate that the court employed a subjective test, focusing solely upon the effects of Gustafson's actions upon Brooms, rather than an objective standard, focusing upon what effect Gustafson's conduct would have had upon a reasonable person.[2]

The district court's conclusions of law clearly establish that the court looked at the facts to see if Gustafson's actions actually interfered with Brooms' ability to perform her work and if she in fact suffered some degree of injury, the very inquiry which the court was required to make under the second part, the subjective prong, of our holding above. Whether the district court also employed an objective standard is somewhat less clear.

We agree that the district court's legal conclusions do not explicitly address how a reasonable person would have reacted under similar circumstances. However, we are not convinced that the district court failed to conduct an objective inquiry to determine whether the defendants created a hostile work environment. We believe that such a finding may be implicit in the district court's holding although never explicitly stated. Thus, the district court in fact may have performed the proper inquiry, even though it did not have the guidance of our opinion today, and reached the correct outcome.

---

**2.** The district court found "that the demeaning conduct of Gustafson did cause such anxiety to Brooms that her workplace was so poisoned." The court noted that "Brooms was the victim of constant sexual remarks and pranks at the hands of Gustafson" and "that her problems with Gustafson made her phobic about the company and that she found it intolerable." The district court concluded "that Brooms has met the burden of demonstrating that the conditions of her workplace were so intolerable as to constitute a violation of Title VII."

■ Nevertheless, we need not base our decision solely upon what we believe the district court found but never explicitly stated. The existence of a hostile work environment is clearly a question of law to be decided once a court makes its finding of facts based upon the evidence of record. It is uncontroverted that we as a reviewing court are to review questions of law *de novo*, *i.e.*, as if we were presented with a clean slate. Thus, the absence of the district court's initial determination of the question before us would be of little consequence.

■ We are as capable as the district court of reaching a legal conclusion based upon the district court's established findings of fact. Thus, based upon these findings, which the defendants cannot demonstrate are in any way "clearly erroneous," we conclude that Gustafson's repeated instances of offensive conduct "would have interfered with a reasonable individual's work performance and would have affected seriously the psychological well-being of a reasonable employee." *Rabidue*, 805 F.2d at 620. This legal conclusion, coupled with the district court's implicit objective finding and its explicit legal holding that Brooms in fact suffered an impairment of her work performance as well as some identifiable injury, mandates that we affirm the district court's holding that Gustafson's conduct constituted sexual harassment in violation of Title VII.[3]

### 2. *Copperweld and Regal's Liability for Gustafson's Actions*

Copperweld and Regal next contend that the district court erroneously concluded that they were liable under Title VII for Gustafson's sexual harassment of Brooms.[4] The district court offered two alternative grounds for its holding: (1) Gustafson was a "manager" of Regal and his acts were the acts of the corporation; or, in the alternative, (2) Copperweld and Regal knew of the problem but failed to take appropriate action. The corporate defendants argue that the first conclusion is erroneous both as a matter of legal principle and based on the record in this case. They argue that the second conclusion is an erroneous conclusion based upon the uncontroverted facts established at trial.

In *Meritor*, the Supreme Court held that employers are no longer held to be strictly liable for sexual harassment by their supervisory employees. 106 S.Ct. at 2408. The Court declined "to issue a definitive rule on employer liability" but offered some guidance as to the proper inquiry under Title VII. The Court stated that lower courts should "look to agency principles for guidance...." *Id.* However, "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.*

■ Copperweld and Regal argue that the district court employed a strict liability standard to find them liable for Gustafson's actions. They believe that the court failed to employ traditional agency principles such as we discussed in *North v. Madison Area Ass'n for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401 (7th Cir.1988). However, we need not address the alleged conflict between our statements in *North*, in which we stated that the proper focus is upon the employ-

---

**3.** Copperweld and Regal also contend that the district court relied upon the testimony of an expert witness to judge the credibility of Brooms' testimony. The record does not support their assertions. The district court did note that "Defendants' own psychiatric witness, Andrew Watson, testified that he did not believe that Brooms was lying...." However, when read in the context of the entire passage, it is clear that the district court was concentrating upon Brooms' reaction to the alleged instances of improper conduct, and not whether the conduct actually occurred.

**4.** The district court premised Copperweld's liability upon the degree of "(1) interrelated opera-

tions, (2) common management, (3) centralized control over labor relations, and (4) common ownership" between Copperweld and Regal. The district court found that Copperweld established Regal's harassment policy and actively participated in determining how to handle Brooms' discrimination charges and concluded that Copperweld was also liable for Gustafson's conduct, although the court quite correctly refused to employ a strict liability standard. Copperweld and Regal do not dispute this holding, other than to challenge the district court's general findings of liability herein.

ee's apparent authority, and our general pronouncements in *Hunter v. Allis Chalmers Corp.*, 797 F.2d 1417, 1422 (7th Cir. 1986) (dicta), in which we focused solely upon whether the employee was a co-worker or a supervisor. The district court's alternative holding, regarding the corporate defendants' knowledge and the adequacy of their response, provides a basis for affirming their liability under Title VII.

In both *Hunter* and *North*, we recognized that an employer is liable for an employee's action if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action. *North*, 844 F.2d at 407 (holding that an employer may "be held liable for discriminatory actions which were attributable to [the employee] only if [the employer] knew or should have known of those actions and failed to take reasonable remedial measures"); *see also Volk v. Coler*, 845 F.2d 1422, 1436 (7th Cir.1988); *Hunter*, 797 F.2d at 1422. Our review of the district court's findings of fact, which Copperweld and Regal cannot demonstrate are "clearly erroneous," and its conclusions of law forces us to conclude that Copperweld and Regal had knowledge of Gustafson's discriminatory acts and failed to take reasonable remedial measures.[5]

■ An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made. We agree with Copperweld and Regal that a court should not focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the em-

ployer's total response was reasonable under the circumstances as then existed. Contrary to Copperweld's and Regal's assertions, we believe that the district court performed exactly this inquiry.

The record does not indicate that the district court merely employed 20/20 hindsight and found Copperweld's and Regal's response to Brooms' charges to be inadequate because they ultimately failed to prevent further abuse. Instead, the district court looked at the nature of Copperweld's and Regal's arguably limited response, under the facts and circumstances that they then faced, and concluded that a reasonable employer would have responded differently facing a similar situation. We do not disagree, given the nature of the information which Copperweld and Regal had concerning the alleged incidents of harassment. Therefore, we hold that the district court correctly found Copperweld and Regal liable under Title VII.

### 3. *The Testimony of William Sullivan, Jr.*

■ Copperweld and Regal next argue that the district court's finding of liability is based upon the admission of certain testimony which the court forced them to offer over their assertion of a valid privilege. Specifically, they contend that the district court erred in requiring William R. Sullivan, Jr. to testify and in admitting into evidence his letter of June 18, 1984, to Regal. As discussed above, Copperweld and Regal hired Sullivan, an attorney, to investigate and advise them concerning Brooms' allegations of harassment by Gustafson. This investigation culminated in a

---

5. The record in this case indicates that Copperweld and Regal knew of Gustafson's discriminatory actions and that the defendants failed to take reasonable remedial measures. For example, the district court found that Francis Sazama, the vice president and general manager of Regal, knew of the alleged harassment as early as January of 1984. Furthermore, the district court found that Copperweld and Regal both were informed in May of 1984, that Brooms had filed a charge of discrimination with the Illinois Department of Human Rights and with the EEOC and that the charge alleged that Gustafson's harassment of her was ongoing.

The court also found that Copperweld's and Regal's investigation of Brooms' initial charges consisted entirely of interviews by William Sullivan, Jr., the company's lawyer, who interviewed only Brooms and Gustafson. After this investigation, the corporate defendants conducted no further follow-up investigation. The court also noted that Sazama's postponement of Gustafson's merit increase and a verbal reprimand "proved ineffective to prevent further harassment."

written report sent to both Regal and Copperweld.

Prior to trial, the district court consistently ruled that Sullivan's notes and the resulting correspondence were protected by the attorney-client privilege and the work product doctrine. However, following the parties' opening statements, the district court ruled that the corporate defendants had waived the privileges by placing before the jury the reasonableness of the decision to hire an "impartial outsider" to investigate Brooms' complaints. Specifically, during opening statement, counsel stated that the corporations' responses to Brooms' charges were reasonable because "they agreed that the investigation should be conducted by an impartial outsider. They chose Regal's attorney, Mr. Sullivan, who you have been introduced to and who is sitting here." With this assertion, the district court ruled that Sullivan had been hired as an investigator, not an attorney, and that no privileges arose to protect his notes or reports.

Thereafter, Brooms questioned various witnesses concerning Sullivan's role in the investigation. She also introduced Sullivan's letter, in effect a report, to Regal into evidence. Brooms eventually attempted to call Sullivan as a witness, but never had an opportunity to question Sullivan because he was not available for "reasons of emergency" until after she rested her case. Nevertheless, she was allowed to cross-examine Sullivan after the defendants called him to testify, a decision which they now argue they were forced to make "to clarify the record and to dispel any possible interference (sic) by the jury that the Company was withholding pertinent information."

Copperweld and Regal argue that Sullivan's role in conducting a factual investigation of the underlying claim did not convert his role from that of an attorney to a mere independent investigator. Thus, his interview notes and opinion letter were protected by the attorney work product doctrine and other communications by the attorney-client privilege. They then argue that they did not waive the privilege during opening statement because opening statements of counsel are not evidence, citing *United States v. Ramirez*, 367 F.2d 813, 814–15 (7th Cir.), *cert. denied*, 385 U.S. 988, 87 S.Ct. 601, 17 L.Ed.2d 449 (1966).

We need not decide whether the district court in fact committed error by allowing Brooms to examine Sullivan's notes and to introduce correspondence between Sullivan and Regal into evidence.[6] Even if Copperweld and Regal could demonstrate clear error, they cannot demonstrate any resulting prejudice. The only error of which they complain relates to issues of credibility. They argue that, "[a]lthough not probative of the truth of Plaintiff's allegations, the fact that many of the allegations were made to Mr. Sullivan during the course of his investigation and the fact that Mr. Sullivan expressed the opinion in his January 18, 1984 letter to Mr. Sazama that Plaintiff appeared to be 'straightforward and truthful,' could well have influenced the judge's ultimate findings." Given the nature of the proceedings and the other evidence introduced at trial, we believe that this alleged prejudice is illusory at best.

Nothing indicates that the district court relied substantially, or even at all, upon Sullivan's testimony or the letter in issue to find that the incidents of improper conduct to which Brooms testified in fact occurred as she described. Furthermore, as Brooms argues, without Sullivan the corporate defendants could offer little proof that their reaction to Brooms' allegations of improper conduct by her supervisor was reasonable and thus should relieve them of liability. Therefore, without finding that any error was committed, we hold that Copperweld and Regal cannot demonstrate any prejudice resulting from the alleged evidentiary

---

6. Because the corporate defendants made the decision to introduce Sullivan's testimony and thus provided Brooms with an opportunity to cross-examine him concerning the nature and results of his investigation, they may have waived any argument that admission of his testimony was improper. However, because the parties do not raise this issue and because the corporate defendants cannot demonstrate any prejudice from any alleged errors, we need not consider the waiver issue here.

errors and that the judgment must be affirmed.

### 4. *Constructive Discharge and Back Pay*

Finally, Copperweld and Regal challenge the district court's damage award to Brooms under Title VII. The only relief for which Brooms asked in her complaint was the compensatory and punitive damages which would have been available under section 1981 had she prevailed; she did not allege constructive discharge in connection with her Title VII claim and did not ask for back pay, front pay, or prejudgment interest. Notwithstanding her pleading deficiencies, *see Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir.1987) (discussing Rule 54(c) of the Federal Rules of Civil Procedure and a court's duty to award prejudgment interest when requested after trial even though not pleaded in the original complaint), the district court invoked its equitable powers and found that Brooms in fact could prove constructive discharge which entitled her to back pay. Copperweld and Regal challenge the award, first arguing that the district court employed an erroneous standard for determining whether Brooms experienced a constructive discharge, and second disputing the manner in which the resulting damage award was calculated.

■■■■ Title VII only provides for equitable relief; a district court cannot award damages, either punitive or compensatory, to redress a violation of Title VII. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1184 (7th Cir.1986).[7] Consequently, a district court may award back pay to a plaintiff only as an equitable remedy, *i.e.*, if a plaintiff can demonstrate that the defendant discharged him or her, either actually or constructively. We therefore must determine whether, as Copperweld and Regal contend, the district court erroneously concluded as a matter of law that they "constructively discharged" Brooms and that she thus was entitled to an award of back pay, or whether such a remedy actually constitutes a punitive damage award under the facts and circumstances of this case.

We agree with the district court's decision to adopt a test which focuses upon the impact of Gustafson's actions upon a reasonable person. It is true, as the Eighth Circuit stated in *Johnson v. Bunny Bread Co.*, 646 F.2d 1250 (8th Cir.1981), that "[a]n employee may not be unreasonably sensitive to his working environment." 646 F.2d at 1256. Furthermore, as the district court in *Bailey v. Binyon*, 583 F.Supp. 923 (D.Ill.1984) very aptly noted, "An employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." 583 F.Supp. at 929 (citations omitted). However, we believe that a reasonable employee would have felt compelled to resign under the circumstances of this case.

The repeated instances of grossly offensive conduct and commentary, which culminated with the incident in which Gustafson showed an extremely offensive photograph to Brooms, grabbed her arm when she attempted to seize a copy, and threatened to kill her, created a situation which would cause a reasonable employee in Brooms' position to contemplate immediate departure. We therefore affirm the district

---

7. Title VII only provides for equitable relief. Section 2000e–5(g) states:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g).

court's finding of constructive discharge and the award of back pay.[8]

### B. *Brooms' Appeal*

Brooms also appeals various rulings made by the district court. Specifically, she challenges the district court's decisions (1) to exclude certain testimony during the trial of her section 1981 claim, (2) to deny her request for reasonable attorneys' fees after finding that the defendants violated Title VII, and (3) to dismiss her pendent state law claims prior to trial.[9] We discuss these issues below.

#### 1. *The Section 1981 Claim*

Brooms appeals various rulings made by the district court in connection with her section 1981 racial harassment claim. However, in light of the Supreme Court's recent decision in *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), we need not address the merits of her appeal.

In *Patterson*, the Supreme Court held that a plaintiff cannot maintain a claim for racial harassment under section 1981 when the claim is based upon conduct by an employer which relates "to the terms and conditions of continuing employment." *Id.* 109 S.Ct. at 2374. Such a claim, if actionable at all, must be brought under Title VII. *Id.*

It is undisputed that Brooms' section 1981 claim does not relate to "conduct at the initial formation of the [employment] contract" or to "conduct which impairs the right to enforce contract obligations through legal process." *Id.* Instead, she alleges that "she was subjected to various forms of racial harassment by her supervisor." *Id.* at 2373. "This type of conduct, reprehensible though it be if true, is not actionable under § 1981...." *Id.* at 2374. Thus, Brooms' section 1981 claim appears to be foreclosed by *Patterson* and the claim must be dismissed.

#### 2. *Attorneys' Fees Under Title VII*

Brooms also argues that the district court erred in denying her request for reasonable attorneys' fees for the successful prosecution of her Title VII claim.[10] The district court noted that the Title VII and section 1981 claims were "intertwined" and that the preparation undertaken for trial of the Title VII claim was much the same as involved in trying the section 1981 claim.

---

8. We find no merit in the defendants' contentions that the back pay award itself was unreasonable. Evidence exists in the record to support the district court's calculations as well as its determination that Brooms could not maintain a position until she completed therapy. We thus affirm the award of $43,319.00.

9. Brooms also raises two other issues in connection with her Title VII claim. She appeals the district court's decision to deny her post-trial motion for front pay, and for the first time in this case requests that she receive prejudgment interest on any damage award. We may summarily dismiss each of these issues.

Brooms first requests that we grant her request for front pay, claiming that such an award is necessary "to make her whole" because the district court declined to order her reinstatement. *See Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1333 (7th Cir.1987) (an ADEA case). As Copperweld and Regal contend, Brooms never requested front pay until a post-trial motion and she never offered evidence directed at that particular issue. Thus, it is no surprise that the evidence of record does not, as the district court held, support such an award. More importantly, even if she could demonstrate that she was entitled to such an award, we could not grant her request because "there was absolutely no evidence produced in this record regarding many of the elements essential to structure a reasonable front pay award." *Id.* at 1335. We therefore hold that the district court did not abuse its discretion to deny her post-trial motion for an award of front pay.

We also refuse to grant her request for prejudgment interest. Brooms never presented this issue to the district court and issues cannot be raised for the first time upon appeal. At a minimum, a party must request the interest in a post-trial motion if he or she has failed to plead the relief in the original complaint. *See Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir.1987).

10. A court may allow prevailing parties to recover reasonable attorneys' fees in Title VII cases. The relevant statute states:

(k) In any action or proceeding under this subchapter the Court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. § 2000e–5(k).

The court ultimately held that "the costs of trial for the Title VII issues cannot be separated from those of the Section 1981 jury trial...." Citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–35, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983), Brooms argues that the district court abused its discretion because a district court cannot deny an award of attorneys' fees in a joint Title VII and section 1981 case merely because it is difficult to "divide the hours expended on a claim-by-claim basis."

■ Brooms correctly notes that ordinarily a prevailing Title VII plaintiff should be awarded attorneys' fees. *See Zipes v. TWA*, 846 F.2d 434, 438 (7th Cir.1988), *rev'd on other grounds sub nom. Independent Fed'n of Flight Attendants v. Zipes*, — U.S. —, —, 109 S.Ct. 2732, 2736, 105 L.Ed.2d 639 (1989) (addressing whether a losing intervenor must pay attorneys' fees); *see also Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir.1978) (stating that a prevailing party "should receive fees almost as a matter of course"). However, this principle is not absolute; "a district court, in the exercise of discretion, may properly deny attorneys' fees entirely." *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607 (7th Cir.1982). We therefore must determine whether the district court abused its discretion under the particular facts and circumstances of this case.

The record indicates, as Brooms contends, that the district court's primary reason for denying her request for attorneys' fees was its belief that separation of the costs attributable to the trial of the two separate claims was too difficult. However, it is also true that the record reveals that the district court was impressed by (1) Brooms' failure to settle the Title VII claim for an amount nearly equalling what she eventually received at trial,[11] and (2) both parties' entitlement to attorneys' fees as prevailing parties.

As for the latter proposition, the defendants would be required to meet a much more rigorous standard to qualify for attorneys' fees as "prevailing parties." *See Zipes*, 109 S.Ct. at 2736 (stating that "prevailing" defendants are entitled to an award of fees "only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation"). Thus, it is unlikely that this rationale provides a justification for refusing to award Brooms' request for fees.

Nevertheless, Brooms' failure to settle may be a significant factor. In *Coop v. City of South Bend*, 635 F.2d 652 (7th Cir.1980), we held that a district court did not abuse its discretion to award attorneys' fees to a prevailing plaintiff under 42 U.S.C. § 1988 notwithstanding that the plaintiff had failed to settle for an amount prior to trial nearly equal to that awarded by a jury. *Id.* at 655; *cf. Vocca*, 686 F.2d at 608. We stated that a refusal to settle did not constitute a "special circumstance" which made denial of attorneys' fees inappropriate because the "litigation ha[d] [not] been unduly prolonged with no greater hope of recovery. The decision of the court on punitive damages was made after the close of all the evidence; the possibility of such a recovery existed at all times during the trial." *Id.*

■ We cannot tell whether Brooms' failure to settle "unduly prolonged" the litigation "with no hope of greater recovery." She asserts that the settlement offer was made before the district court ruled upon any motions to dismiss and was premised upon Brooms' agreement to dismiss all of her pending and future federal and state claims, including both the section 1981 and Title VII claims as well as her state law claims for negligence and intentional infliction of emotional distress. However, she does not cite to any authority in the record and our reviews discloses nothing. The district court's opinion does not state under what

**11.** We agree with the district court's finding that Brooms' insistence upon a settlement in excess of $3,000,000.00 indicates that her sole motivation for proceeding to trial was to pursue her section 1981 claim because such a huge award could have been made only under section 1981's provisions for a jury trial and punitive damages; as we stated above, punitive damages are unavailable under Title VII.

circumstances the settlement offer was made. Thus, we cannot determine whether the settlement offer constitutes a "significant factor" which would justify the district court's decision to refuse her request for an award of attorneys' fees.

On remand, the district court must determine the nature of the settlement offer and whether Brooms reasonably declined to settle. If the district court finds that the settlement of $40,000.00 was solely upon the Title VII claim, then the district court, under *Vocca* and *Coop*, could in its discretion reasonably find that her refusal to settle was unreasonable since she could, at best, only receive the $43,000.00 award ultimately received.

However, if as Brooms claims, the settlement offer was in contemplation of her dismissal of all claims, then the district court must determine the reasonableness of her decision not to settle under the circumstances as they then existed. If the district court ultimately finds that she reasonably refused to settle, then the court must determine the total fees involved, less the amount expended in prosecuting her unsuccessful section 1981 claim and the unsuccessful retaliatory discharge claim under Title VII, and award the remainder. We therefore remand this case to the district court for a determination of any attorneys' fees to which Brooms may be entitled.

12. That claim was also brought against Regal and Gustafson. Brooms admits that dismissal as to Regal was appropriate. However, if we find that dismissal of Copperweld was improper, then she requests that we also reinstate the state law claim for intentional infliction of emotional distress against Gustafson because his presence in the action would no longer "complicate the Title VII claim." Because we conclude that dismissal as to Copperweld was proper, we likewise decline to reinstate the state law claim against Gustafson.

13. Section 5 of the IWCA states:
    § 5
        (a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety, service, advice or recommendations for the employer where the agents or employees of any of them for injury

### 3. *Dismissal of Brooms' State Law Claims*

Brooms next argues that the district court erroneously dismissed her state claims for intentional infliction of emotional distress and for negligence against Copperweld[12] based upon the exclusivity provisions of the Illinois Workers' Compensation Act, Ill.Rev.Stat. ch. 48, ¶ 138.1 *et seq.* (hereinafter "IWCA"). She believes that the district court wrongly concluded that Copperweld was Brooms' employer within the meaning of section 5 of the IWCA, Ill.Rev.Stat. ch. 48, ¶ 138.5.[13] Brooms cites no authority for this proposition.

The defendants point out that Brooms' arguments are contrary to her arguments in the rest of the case and the district court's findings regarding the status of Copperweld. In other situations, Brooms has argued that Copperweld, like Regal, was her "employer" and thus subject to charges of racial and sexual discrimination committed by its employee, an assertion with which the district court evidently agreed. *See supra* note 5. Furthermore, regardless of the Title VII issue, Illinois courts apparently would agree with Copperweld and Regal that the IWCA provides an exclusive remedy for Brooms' state law claims even if Copperweld is not an "employer" under the act. *See Anderson v. Pistner,* 148 Ill.App.3d 616, 499 N.E.2d 566,

or death sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to anyone wholly or partially dependent upon him, the legal representatives of his state, or anyone otherwise entitled to recover damages for such injury.

....
    (b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating the legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act.
Ill.Rev.Stat. ch. 48, ¶ 138.5.

569, 102 Ill.Dec. 9, 12 (1986). Brooms makes no attempt to challenge Copperweld's and Regal's reading of *Anderson*.

Brooms cannot demonstrate that the district court abused its discretion to dismiss her pendent state law claims. We therefore affirm the district court's decision.[14]

### III. CONCLUSION

We hold that the district court correctly found that the alleged instances of sexual harassment violated Helen Brooms' rights under Title VII. We also hold that Copperweld Corporation and Regal Tube Company were liable for those actions because they failed to take reasonable remedial measures upon learning of the abusive conduct of their employee. We hold too that the conduct constituted a constructive discharge of Brooms and that an award of back pay was appropriate. Finally, we reject the contention of Copperweld and Regal that they suffered substantial prejudice from the district court's allegedly erroneous decision to allow the introduction of certain evidence over their assertion of the attorney-client privilege and work product doctrine.

We also find that Helen Brooms could not maintain a section 1981 claim in light of the Supreme Court's recent decision in *Patterson v. McLean Credit Union*. We further find that the district court properly instructed the jury and did not abuse its discretion to exclude Sandra Mara's testimony. We hold too that the district court improperly failed to grant Brooms' request for an award of attorneys' fees in connection with Brooms' Title VII claim. Finally, we hold that the district court did not abuse its discretion to dismiss her pendent state law claims.

We REMAND this case to the district court for a determination of the amount of any attorneys' fees to which Brooms may be

entitled. The district court's decision is in all other respects AFFIRMED.

---

14. When ruling upon the defendants' motion to dismiss, the district court also intimated that even if the exclusivity provisions of the Illinois statute were inapplicable, it nevertheless would decline to exercise its pendent jurisdiction given the complexity of the Title VII and section 1981 claims. We agree with the court that the simultaneous trial of these two separate claims, one to the bench and the other to a jury, did not need to involve the further problems associated with the contemporaneous trial of a number of state law claims. Thus, we easily could affirm the district court's dismissal of the pendent state law claims without ever considering the Illinois statute in issue.