**Ivory COLLINS, Plaintiff,**

v.

**ARGONNE NATIONAL LABORATORY and the University of Chicago, Defendants.**

**No. 90 C 3228.**

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1991.

and 2) defendants' pattern and practice of discriminating against employees over the age of forty.

## Facts

The plaintiff started working as a janitor for Argonne on October 11, 1976. Within four months, she was promoted to the position of laborer. Approximately one year later, she was promoted to the position of custodial foreman. She retained this title until her alleged constructive discharge on October 28, 1988.

As a custodial foreman, the plaintiff was in charge of providing janitorial services for certain designated areas within Argonne's facilities. This entailed monitoring and supervising custodial services provided by the janitors, laborers and labor group leaders. Because of this responsibility, she was hired to train her subordinates and discipline them if they stepped out of line. The plaintiff was supervised by a custodial manager, Kay Lawhorn. Lawhorn, in turn, reported to Mr. Bouie, the director of Plant Facilities and Services ("PFS").

Because of numerous complaints about the custodial services, and his own personal observations, Bouie became increasingly concerned over the quality of the custodial services being provided. To remedy this situation, Bouie hired Servicemaster to create a detailed list of job assignments for each area. The custodial managers and their crews were made accountable to their supervisors for proper completion of their daily assignments.

The plaintiff's problems with Argonne began on December 18, 1987. The custodial manager, Kay Lawhorn, received a report from a crew member that on the previous day, Collins had organized a birthday party in her office for one of her crew members. An investigation of this party was undertaken. A search of the plaintiff's office revealed several bottles of alcohol. Additionally, at least five of the ten crew members who were interviewed ad-

Aldo E. Botti, Marian H. Donohue, Botti, Marinaccio, DeSalvo & Tameling, Ltd., Oak Brook, Ill., for plaintiff.

Adrianne C. Mazura, Debra Duzinskas, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Argonne National Laboratory ("Argonne") and the University of Chicago ("University") have moved for summary judgment on Ivory Collins' claims against them under 29 U.S.C. § 621 et seq. (1967).[1] Collins is a female over the age of forty; she seeks to recover under § 621 for 1) defendants' constructive discharge of her,

1. Unless indicated, the facts in this opinion are undisputed and taken largely from the defendant's Local Rule 12(*l*) Statement. The court has recognized a factual dispute only where Collins has challenged the defendants' facts by

way of her Local Rule 12(m) Statement, and has supported her factual contentions with citations from the record. Where there is a factual dispute, the court has taken Collins' version as true for purposes of this motion.

mitted that alcohol was served at the party. No one who was interviewed denied the presence of alcohol. The plaintiff denies that alcohol was at the party and for purposes of this motion this court will consider that statement as true. She does not dispute, however, that alcohol was found in her office, but she states that it could have been placed there by a number of people who have access to her office. Furthermore, she admits that several employees stayed beyond their lunch period to continue partying.

It is a serious violation of company policy to have alcohol at work and a violation of policy to keep personnel beyond their lunch hour. The plaintiff is aware of these rules. Although for purposes of this motion this court must assume that no alcohol was served; it concludes, however, that Argonne had a reasonable basis to believe that alcohol had been served and that company policy was breached. Furthermore, the plaintiff admits that certain employees stayed beyond their lunch hour which was another violation and formed part of the basis for the disciplinary action. As a result of these alleged violations of company policy, the plaintiff was suspended for two weeks without pay, and denied her annual review.

In April of 1988, Ms. Lawhorn evaluated the plaintiff's performance. This written evaluation covered the period of June 1987 through April 1988. A series of criticisms were leveled against the plaintiff. These criticisms were that the quality of services performed in the 363 Central Shops was poor, that she should take additional steps to ensure that the equipment is secure, that she failed to rotate blue slip assignments, that her inspection reports lacked sufficient detail, and that she did not adequately supervise one of her crew members. Her overall evaluation was slightly below average, but her evaluator stated that Collins was a hard worker and that she could become an excellent foreman.

The plaintiff disputes the merits of some of these criticisms. Left uncontroverted is that there were complaints about the quality of service in the 363 shop area.[2] In fact, one employee was so disgruntled with the level of service in the 363 shop that he indicated that the conditions were deplorable. In addition, the plaintiff has not refuted the fact that she left the storage key hanging on a hook right next to the storage area. Thus, the criticism that she should take additional steps to secure the storage area was justified. As for the improper use of blue slips, it is undisputed that certain crew members and the union president complained to Lawhorn about the inequities in the plaintiff's blue slipping procedure. It is clear that many of the criticisms leveled against the plaintiff were legitimate, and not designed to harass her.[3]

Plaintiff's final bone of contention was that she was improperly suspended for failing to obtain her supervisor's permission to take a vacation. In September of 1988, the plaintiff, on the spur of the moment, went to Las Vegas to attend a wedding. She called her secretary to inform her that she would miss the next three days of work.[4] The taking of such a vacation requires advanced approval by a supervisor. The plaintiff, however, believed that the absence was personal leave which she thought did not require permission from her supervisor. As a result, the plaintiff was not paid for the three day vacation and suspended for two additional days without pay.

### Constructive Discharge

The prima facie case for age discrimination contains four elements:

1) she belongs to a protected class, 2) she was qualified for the position, 3) she suffered an adverse employment

---

2. The plaintiff's only dispute with this criticism was that she was not informed of any problems before her evaluation.

3. It is also undisputed the plaintiff violated company policy by allowing a sick worker to return to work before obtaining a release from the health department. This was a very serious violation of company policy.

4. The plaintiff admits that in every previous instance where she took time off she obtained a manager's approval.

decision, 4) the employer sought to replace her.

*Mason v. Pierce*, 774 F.2d 825, 828 (7th Cir.1985).

The plaintiff clearly belongs to a protected class. Although she had received a slightly below average review, her past reviews and performance indicates that she was qualified. In addition, she was replaced by a younger person. Therefore, the only remaining issue is whether she was constructively discharged.

■ This court has most recently discussed the necessary elements of constructive discharge in *English v. General Dev. Corp.*, 731 F.Supp. 305, 307 (N.D.Ill.1990). In order to prove constructive discharge, the employee's working conditions must be so intolerable that she is forced into involuntary retirement. See also *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir.1986). In addition, the "employee must seek legal redress while remaining in his or her job unless confronted with an aggravated situation beyond ordinary discrimination." *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir.1989) quoting *Bailey v. Binyon*, 583 F.Supp. 923, 929 (N.D.Ill.1984). The ultimate question to be decided is whether, "working conditions would have been so difficult that a reasonable person in the employees shoes would have felt compelled to resign." *Miller v. Illinois*, 681 F.Supp. 538 (N.D.Ill.1988) quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114 (1st Cir.1977).

■ Taking everything that Collins says as true, she has failed to show that working conditions were so intolerable that a reasonable person would have resigned, and has neglected to adequately explain her failure to seek legal redress before resigning. On the first score, she points to three instances that made her life intolerable.

The first was her two week suspension for having an alcohol party in her office in which several employees under her direction stayed beyond their lunch hour. It is undisputed that keeping employees past their lunch hour is a clear violation of company policy. In addition, the serving of alcohol on company premises is a very serious violation. In fact, the plaintiff admits that such a violation could result in the employees termination. Although for purposes of this motion this court will assume that no alcohol was served, this does not mean that due to the overwhelming evidence against her, the company did not have reason to believe that there had been alcohol. At least five people at the party admitted there was alcohol, and no one denied it. Furthermore, alcohol was found in the plaintiff's office. Maybe it was a case of bad luck, but under the circumstances the company had every justification to take the actions that it did. There is no indication whatsoever that the company acted in bad faith. In light of the overwhelming evidence against her, she could not have been surprised that the company would take some action for such an apparent breach of a serious company policy. An additional example of the companies good faith was that they could have fired her, but chose a less severe penalty.

The next example of allegedly intolerable treatment was her performance review that she received in 1988. In light of the fact that the review was an accurate account of her prior deficient performance, this court does not see how this adds anything to her claim. She merely received a slightly below average rating with encouragement that her performance would improve over time. This is not intolerable treatment.

The last example of alleged discrimination occurred when she was suspended for two days for taking a three day vacation on the spur of the moment without notifying her superiors. It is company policy that such vacations be cleared in advance with her supervisor. The plaintiff insists that she thought that she was not required to inform her supervisor of her three day vacation. Again, the company had every reason to discipline the plaintiff for this clear breach of policy. Whether or not the plaintiff was under the mistaken impression that she need not inform her supervisor, the company's actions were reasonable and she should not have been surprised by

938

them. Furthermore, she was only mildly disciplined for this infraction. She was not paid while she was gone, and she was suspended for two days without pay.

Taking everything the plaintiff says as true, this case clearly does not rise to the level of constructive discharge. Their conduct does not come close to that seen in cases in this circuit and district which have found constructive discharge. See *Parrett v. Connersville*, 737 F.2d 690, 693–94 (7th Cir.1984) (plaintiff constructively discharged after demotion from being chief of detectives, assigned to work in a closet without a telephone and without work to do.) *Bailey v. Binyon*, 583 F.Supp. 923 (N.D.Ill.1984) (plaintiff constructively discharged after employer repeatedly subjected her to offensive racial and sexual slurs, sexual advances, and physical assaults, even after plaintiff had filed complaints.)

Because Collins was not constructively discharged, her first claim must fail. Even if this court were to find a constructive discharge, it would not excuse the fact that she failed to seek legal redress while remaining employed. *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir.1989). This case does not come anywhere near the type of actions which would excuse this oversight. It would have been necessary for her to show an aggravated situation that goes beyond ordinary discrimination. *Id.* This was clearly not done.

### Disparate Impact

 To establish a prima facie case of disparate impact the plaintiff must show statistical disparities in the employer's work force, and identify some specific employment practice that is challenged. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827 (1989). The plaintiff argues that she need not show statistical evidence because of the small number of custodial foremen, six. In any event, even if this court excuses the plaintiff from this statistical showing,[5] she has not identified any challenged

specific employment practice that has had a disparate impact on her and other employees. Instead she points to isolated instances where people over forty were fired or retired. The reasons given for their departure are so varied that it is hard to draw any conclusion let alone establish a specific employment practice. Therefore, her claim must fail.

For the foregoing, reasons this court grants the defendants' motion for summary judgment on all counts.

---

**5.** The court does not agree with plaintiff's assertion that the relevant population is custodial foremen. There are many other workers in her department including janitors, laborers, labor group leaders, supervisors, labor relations specialists, and custodial managers. A statistical evaluation should have been made with regard to this larger population.