959 F.2d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ernest L. WESTFIELD, Plaintiff-Appellee,
v.
STATE OF ILLINOIS DEPARTMENT OF LABOR, Defendant-Appellant.
 No. 90-3335.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 4, 1991.
Decided April 1, 1992.
 
 1
 Before BAUER, Chief Circuit Judge, POSNER, Circuit Judge, and JAMES B. MORAN, Chief District Judge*.
 
 Order
 
 2
 Ernest L. Westfield claimed that he had been denied a promotion because he was black and he sued his employer pursuant to 42 U.S.C. §§ 1981 and 2000e. At the end of the trial the court allowed plaintiff to shift his § 1981 claim to § 1983, and, prior to the court's decision, plaintiff filed a Second Amended Complaint relying upon §§ 1983 and 2000e. The court thereafter entered judgment for plaintiff in the sum of $9,012.67, together with costs of suit and a reasonable attorney's fee, and with a direction to defendant to offer plaintiff the right of first refusal on the next opening for the position plaintiff sought. This appeal followed.
 
 
 3
 Plaintiff concedes that Will v. Michigan Department of State Police, 491 U.S. 58 (1989), precludes recovery on the basis of § 1983. Although the trial court appeared to rest, in part, upon § 1981, we think plaintiff had clearly abandoned that claim prior to judgment.
 
 
 4
 The damages awarded included $5,000 for emotional distress, but § 2000e provides only for equitable relief, and that does not include recovery for emotional distress. Brooms v. Regal Tube Co., 881 F.2d 412, 423 (7th Cir.1989). The real dispute, then, relates to plaintiff's Title VII claim. The backpay award is modest, $2,600 plus prejudgment interest, because plaintiff did not seek comparable promotions that were shortly thereafter available and, therefore, the trial court concluded, did not exercise reasonable diligence to mitigate his damages. Defendant contends that the evidence does not support any relief at all. We disagree.
 
 
 5
 Plaintiff was employed by the Illinois Department of Employment Security, in its Champaign office. He is African-American. When the office manager at the Champaign office retired from that position in 1982 plaintiff wanted the position: it would have been a desired promotion and it would not have required plaintiff to relocate, which he did not wish to do. He did not get the position. Instead, it went to Donald Coverstone, the office manager in the Olney office, who came to Champaign by lateral transfer. Coverstone is a white male.
 
 
 6
 There is a usual way for filling a vacancy in the Department. Employees who are interested in being considered for a particular classification submit an application for an examination, and they thereafter receive a grade based upon their experience and education. When a position in that classification becomes available it is posted, and employees who have previously qualified for that classification or who are already employed in that classification can apply for the open position. It is not necessary that they do anything further. All those who are in the pool of eligible employees and who respond to the posting are considered.
 
 
 7
 The Department of Employment Security also has an affirmative action plan intended to promote equal opportunity employment. Included in the plan is a commitment, during periods of restrictive personnel hiring and promotion opportunities, to affirmative recruitment, to broaden the pool of applicants in classifications and for sections in which few or no minority group members are then employed. Management is directed to make a special effort to encourage minority employees to aspire and apply for higher level positions.
 
 
 8
 Plaintiff applied for the office manager classification and received the grade of A. There is no dispute that he was well qualified to be an office manager. He did not specifically apply for the Champaign office manager position because that position was never posted. Coverstone, the Olney office manager, directly contacted William Disque, the central region manager, about his interest in the position. Coverstone had previously, in 1967, been a counselor for Disque in Mattoon, and others had also advised Disque of Coverstone's talents and abilities. Disque was also aware that Lynn Kozoman, the Champaign assistant manager, was also interested in the position. Disque recommended that the position be posted. That recommendation was not followed.
 
 
 9
 The actual hiring decision was made by John Smith, the state superintendent and Disque's superior. He was aware of Coverstone's interest and the interest of Claude Shelby, an African American employee of the Department who wished to transfer from East St. Louis. Smith was unaware of plaintiff's interest; neither he nor Disque ever checked the list of those interested in and qualified for an office manager position. Smith selected Coverstone.
 
 
 10
 The trial court did not find that the defendant acted to prevent African Americans from being promoted or that it was motivated by any animus against plaintiff because of his race. The court's determination was, rather, that the defendant, in the interest of favoring a particular long-time white employee, ignored customary selection procedures that would have required careful consideration of plaintiff as a well-qualified African American. The trial court was not at all persuaded by the defendant's stated reasons for following a subjective selection process rather than the structured procedure which involved the Department of Personnel and the agency's affirmative action plan.
 
 
 11
 The defendant's explanation was that the Champaign office manager position never became an open position required to be posted because it was filled by an administrative transfer. An administrative transfer includes a realignment of staff and a lateral transfer can be, according to defendant, considered as a realignment of staff. A supervisor can therefore unilaterally approve a lateral transfer of an employee without regard to the competitive list, the requests of any other employee--such as minority applicant Shelby--or the affirmative action plan.
 
 
 12
 Defendant could not, however, point to any bulletin or policy explanation which adopted the expansive view of "realignment of staff" urged upon the court below, and Judge Baker believed that view not only was difficult to square with the language used but also was inconsistent with the obligations and protections against arbitrary managerial action established through the personnel system and affirmative action plans. He was equally dubious about the reasons advanced by defendant as to why the affirmative action requirements did not apply. One reason given was that minority employment considerations had no application to transfers, despite agency bulletins requiring that the policy respecting the filling of positions be consistent with related policies such as affirmative action and employee development. Another reason was that, despite the period being one of restrictive personnel hiring, one could not be sure that there was any affirmative obligations respecting office manager positions. While there was some underutilization of blacks downstate, only one minority office manager in the central region (not African-American), and only two black office managers of 36 downstate, defendant urged that the concentration of African-American office managers in Chicago and the complicated way underutilization is calculated meant that technically it could not be said that there were no or few minority group members in the classification for the purposes of the affirmative action obligations.
 
 
 13
 Judge Baker thought the explanations were a bit tortured. The agency was supposedly seeking to encourage minority advancement. There was not one black office manager in the central region and precious few anywhere downstate. A qualified African American employee sought a lateral transfer. Another, plaintiff, had done all he could be expected to do in order to be considered. Both were ignored. Instead, the decisionmakers acted on the personal request of an old associate. The trial court considered the procedure an "old boy" network in operation and a pretext to avoid the obligations imposed by the usual posting procedures, procedures that would necessarily have required careful consideration of plaintiff as a qualified minority applicant. We cannot say he was clearly erroneous in so determining.
 
 
 14
 We must reverse, of course, because we think the § 1981 damages cannot be sustained. We also note that the backpay calculation apparently is slightly in error. We therefore reverse and remand, with direction that the judgment be modified in light of this decision.
 
 
 
 *
 Chief Judge of the Northern District of Illinois, sitting by designation