In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3903

Michelle Johnson,

Plaintiff-Appellant,

v.

Togo West, Jr., Secretary of
Veterans Affairs,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94-C-6530--Blanche M. Manning, Judge.

Argued April 12, 1999--Decided July 5, 2000

Before Posner, Chief Judge, and Easterbrook and Diane
P. Wood, Circuit Judges.

Diane P. Wood, Circuit Judge.  Michelle Johnson
sued her former employer, the Department of
Veterans Affairs ("VA"), under Title VII of the
Civil Rights Act of 1964, alleging that her
supervisor, Karl Williams, sexually harassed her
and that the VA retaliated against her for
challenging the harassment. Following a bench
trial, the district court held that Johnson had
been subjected to a hostile work environment but
that the VA was protected from liability by the
affirmative defense set forth in Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), and
Faragher v. City of Boca Raton, 524 U.S. 775
(1998). The district court also found that the VA
had a legitimate, nonpretextual reason for firing
Johnson and thus had not improperly retaliated
against her. Because we find the district court's
findings on the affirmative defense laid out in
Ellerth and Faragher to be incomplete as a matter
of law, and we conclude that the VA may have
retaliated against Johnson for complaining about
the harassment, we reverse the judgment of the
district court and remand for further
proceedings.

I

From August 28, 1990, to September 1993 Johnson

worked as secretary to Karl Williams, the Chief of Police at the Hines VA Hospital. Shortly after Johnson started to work for Williams, he began to express a crude sexual interest in her. The first incidents took place on September 19, 1990. Williams invited Johnson into his office and locked the door to both of their offices. Holding a condom in one hand, he pulled down his pants and exposed himself. When someone knocked at the door, Williams zipped up his pants and instructed Johnson to act calm. Later that day, Williams took Johnson to a hotel. After disrobing and instructing Johnson to do the same, they had sexual intercourse. Johnson testified that she neither wanted nor desired to have sex with Williams but did so out of fear that she would be terminated if she rejected his advances. The next day, Williams gave Johnson a greeting card with a pre-printed message stating "[i]t's nice to be able to share the simple things of life with you: a quiet walk, a candlelit dinner, an evening by the fire . . . sex that registers on the Richter Scale." He signed the card "Luv 'Chief' a/k/a Will a/k/a Maurice a/k/a Batman a/k/a Darkman."

The incidents did not stop there. They continued through 1991, with Williams engaging in a variety of inappropriate sexual behavior. He often touched Johnson inappropriately, for example, by trying to separate her legs as she moved from her desk to her typewriter and pressing his chest against her back while she was typing. When Williams learned Johnson was dating another man, he began verbally abusing her. Williams also gave Johnson a Valentine's Day card on February 14, 1991, which read "I can't imagine loving you more than I do today . . . but tomorrow I will. HAPPY VALENTINE'S DAY, SWEETHEART."

While all of this was going on, Johnson did not report Williams's conduct, because she was afraid of being fired. The Valentine's Day card, however, seems to have been the last straw. One week after she received it, she informed her co-worker, Valerie Davis, of Williams's harassment. Davis encouraged her to report Williams to an EEO officer, but Johnson refused. In the summer of 1991, when her probationary employment period was coming to an end, Johnson told VA Associate Director James Jones, Williams's supervisor, that Williams was spreading false rumors that she and Williams were romantically involved. Johnson, however, did not tell Jones about the other incidents of harassment. Jones confronted Williams about Johnson's allegations (without mentioning her name), but Williams denied that he was involved with any of his employees. In September 1991, Johnson applied for three other jobs in order to avoid further contact with Williams. She was not selected, even though she

was qualified for the positions. (Williams had no input into the decisions.)

In January 1992, Johnson met with Dr. Joan Cummings, Director of Hines Hospital, and told her about the harassment. Cummings instructed Johnson to file a formal complaint with an EEO counselor, which Johnson did on February 28, 1992. Cummings then appointed an administrative board to review Johnson's complaint. Although Cummings declined Johnson's offer to drop the complaint in exchange for a promotion elsewhere in the hospital, on May 21, 1992, Cummings transferred Johnson to an equivalent position in another area as a temporary corrective measure while the investigation was ongoing.

In June 1992, Johnson started seeing a therapist, complaining that she was suffering from hallucinations, substance abuse, and depression. The EEO investigation ultimately concluded that Johnson had been sexually harassed. Cummings reviewed the EEO report and, on November 9, removed Williams as chief of police and sent him to a different area, transferred Johnson back to her old job, and assigned her to a new supervisor.

On September 23, 1992 (prior to Cummings's notice of corrective action), Johnson encountered Williams in the hallway as he was leaving his interview with the EEO officials. Johnson struck Williams across the face because she believed he had lied to the EEO investigators about her allegations. A year later, in September 1993, Cummings fired Johnson for striking Williams.

Johnson responded with this Title VII action. Her complaint claimed that she had been exposed to a hostile work environment, and that the VA retaliated against her by denying her promotions, transferring her back to the department where she experienced the harassment, and, ultimately, terminating her employment. The district court found that Johnson was subjected to a hostile work environment. However, the court denied Johnson relief, because it found that the VA, upon discovering the harassment, took reasonable and adequate measures to prevent it. The VA had removed Williams from his position as Chief of Police in November 1992 and had appointed a replacement, but in May 1993, as a result of an investigative review board's findings, it reinstated Williams to the Chief of Police position and reassigned Johnson to a different but equivalent job in another department. The district court also found that the VA fired Johnson not because she filed a sexual harassment claim but because she struck Williams.

II

Because this case comes to us after a full bench trial, we review the district court's conclusions of law de novo and its findings of fact for clear error. NRC Corp. v. Amoco Oil Co., 205 F.3d 1007, 1011 (7th Cir. 2000). "If the trial judge correctly states the law, then his findings as to whether the facts meet the legal standard will be disturbed only if they are clearly erroneous. Our review [is] more searching if the district court has committed an error of law, including one that 'infect[s] a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law.'" Daniels v. Essex Group, Inc., 937 F.2d 1264, 1269-70 (7th Cir. 1991) (internal citations omitted) (quoting Bose Corp. v. Consumers Union, 466 U.S. 485, 501 (1984)).

Johnson raises six arguments on appeal, five of which focus on her hostile environment claim. In contesting the district court's handling of that claim, she first argues that the VA was not entitled to the affirmative defense set forth in Ellerth and Faragher. She then asserts in the alternative that, even if the VA is entitled to the affirmative defense, it failed to satisfy the affirmative defense's two requirements. Johnson's last argument on appeal focuses on her retaliatory discharge claim.

A. Vicarious Liability and the Ellerth/Faragher Affirmative Defense

The district court found that Johnson was sexually harassed. As this finding was not clearly erroneous and in any event the VA has not cross-appealed from it, we focus on the standards of vicarious liability, which is the focus of the parties' arguments on appeal. The VA does argue that if this court reverses the district court's judgment on the Ellerth/Faragher defense, this court should remand for a new trial on the finding of sexual harassment. According to the VA, the district court inexplicably ignored evidence that Johnson and Williams were--at least at the start-- involved in a consensual relationship. A new trial, however, is unnecessary, even if we could give this relief without a cross-appeal. Whether or not the initial sexual relationship was consensual, the VA's proffered evidence does not refute the district court's findings concerning Williams's behavior after the "relationship" dissolved.

In Ellerth and Faragher, the Supreme Court considered an employer's vicarious liability for the sexually harassing conduct of its supervisory

staff. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. Vicarious liability automatically applies when the harassing supervisor is either (1) "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy," Faragher, 524 U.S. at 789, or (2) "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Id. at 808. Absent either of these situations, however, an employer may avoid vicarious liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. Johnson argues that the VA was not entitled to the affirmative defense because (1) Williams was an "employer" for the purposes of Title VII-- that is, the VA's "proxy" or "alter-ego," and in any event (2) she suffered a tangible employment action as a result of her harassment.

Johnson argues that Williams was, for Title VII purposes, her "employer" or the VA's alter-ego, and, as such, his actions are automatically attributable to the VA. Faragher suggests that the following officials may be treated as an employer's proxy: a president, owner, proprietor, partner, corporate officer, or supervisor "hold[ing] a sufficiently high position in the management hierarchy of the company for his actions to be imputed automatically to the employer." 524 U.S. at 789-90 (citing with approval Torres v. Pisano, 116 F.3d 625, 634-35 & n.11 (2d Cir. 1997)). Williams was not such a person. Although Williams had an important title, "Chief of Police," he had no less than two supervisors (Jones and his supervisor, Cummings) within the hospital and no doubt others within the VA's bureaucracy. As such, he was not a high-level manager whose actions "spoke" for the VA. See Harrison v. Eddy Potash, Inc., 158 F.3d 1371, 1376 (10th Cir. 1998). If automatic vicarious liability is warranted for Williams, there would be little or nothing left of the affirmative defense the Supreme Court took care to fashion in Ellerth and Faragher.

Williams was, in fact, a rather low-level supervisor. He was not the only person to whom Johnson reported, as she worked for a number of people. Outside of signing off on Johnson's

performance appraisals, Williams had no ability to change the terms and conditions of Johnson's employment. The VA had systems in place to check the behavior of its low-level supervisors like Williams: it disseminated its sexual harassment policy and had grievance procedures through which an employee could make a complaint without having to go through the offending supervisor. See Montero v. Agco Corp., 192 F.3d 856, 864 (9th Cir. 1999). Her case therefore turns on the question whether the district court correctly concluded that the VA had met the requirements of its affirmative defense.

In one final effort to avoid this inquiry, Johnson argues that hers is a case in which a tangible employment action occurred--her discharge--and thus that the affirmative defense is not available to the VA. She is certainly correct that being discharged is a "tangible employment action." See Silk v. City of Chicago, 194 F.3d 788, 804 & n.16 (7th Cir. 1999). However, Johnson's termination did not result from Williams's harassment in the way Ellerth and Faragher contemplate. An employer is vicariously liable for tangible employment actions undertaken by the harassing supervisor. Faragher, 524 U.S. at 808 ("No affirmative defense is available [ ] when the supervisor's harassment culminates in a tangible employment action.") (emphasis added). When a supervisor takes a tangible employment action--in contrast to harassment that does not involve such a tangible action--"there is assurance the injury could not have been inflicted absent the agency relation" and thus the supervisor's action becomes for Title VII purposes the act of the employer. Ellerth, 524 U.S. at 761-62.

Williams's actions created a hostile working environment for Johnson, but he himself did not use his supervisory authority to get her fired. To the contrary, Williams reported Johnson's assault to his higher-ups in the VA hospital administration, who in turn investigated his complaint and resolved it through the appropriate administrative channels. Although his report of her actions resulted in her being fired, he was not her supervisor at the time, he played no role in the decision to fire Johnson, and the decision to fire her was made after his report of Johnson's assault was considered in the proper administrative channels. See Silk, 194 F.3d at 806 & n.17 (holding employer not vicariously liable for tangible employment action when supervisor submitted complaint regarding plaintiff-employee's violation of regulations and employment action was taken after full investigation and hearing on the issue). We therefore hold that the district court correctly

found that the VA could claim the affirmative defense and consequently move on to determine whether the court applied the defense correctly.

Johnson argues that even if the VA was entitled in principle to the Ellerth/Faragher affirmative defense, it did not meet its burden of proof. That burden requires the employer to establish two points, not just one. Given the fact that our review of the district court's findings here is only for clear error, we see nothing reversible in its finding that the VA "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," which is the first part of the defense. The district court found that the VA had an established harassment policy. Faragher, 524 U.S. at 807; Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999) ("Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of [the affirmative] defense."). When Johnson finally reported the full extent of the harassment to Cummings and the agency EEO staff, the VA responded adequately: it ordered an investigation and it immediately separated Johnson and Williams. Cummings even refused to drop the investigation in the face of Johnson's request that she do so. Johnson does not point to anything to suggest these findings are clearly erroneous. (In her motion for reconsideration before the district court, Johnson made the argument that the harassment was so pervasive that the VA should have discovered it and taken action even before her complaints. Johnson failed to make this argument at trial, however, so the district court deemed it waived. That is enough for us to disregard it as well.)

The problem with the district court's decision does not lie, however, in its factual findings with respect to the first element of the defense. It lies in the absence of the court's consideration of element 2, which requires a finding about whether "the plaintiff employee unreasonably failed to take advantage of any protective or corrective opportunities provided by the employer or to avoid harm otherwise." In other words, it is the VA's burden to show that Johnson acted unreasonably. The district court made no findings at all about the reasonableness of Johnson's failure to take advantage of any preventive or corrective opportunities the VA provided. Even though the district court's failure to state explicitly what it was doing would not require a remand if the court's factual findings were sufficient for us to draw our own legal conclusions, see Brooms v. Regal Tube Co., 881 F.2d 412, 420 (7th Cir. 1989), we do not find

this to be such a case.

   On this record, a trier of fact could rationally come to either conclusion on the second element: that Johnson behaved reasonably, or that she did not. The VA stressed the fact that it took Johnson nearly a year to report the harassment, which is surely an element in its favor. But, as the district court itself acknowledged, her failure to do so may have stemmed from Williams's threats and intimidation, which convinced Johnson (still at that point a probationary employee) that to take any action would come at the price of her job. Such a reaction may not be unreasonable. Cf. Caridad, 191 F.3d at 295 (finding employee's failure to report harassment unreasonable where it was based on fear of her co-workers' reaction). There was evidence that Williams threatened Johnson, verbally abused her, and even threw mail in her face. A trier of fact could find that Johnson was under severe emotional and psychological stress as a result of the harassment. Her co-workers observed that she appeared fearful and introverted when she was working for Williams; at one point, when Williams had her backed into a corner, she yelled "I'm going to scream!" Eventually, she consulted a therapist to help her through the hallucinations, substance abuse, and depression she suffered.

   This presents a factual issue on the affirmative defense that was never resolved by the district court, and that cannot be resolved by this court on appeal. It is more than a loose end, as its resolution will be determinative of the VA's liability and the outcome of Johnson's case. We therefore conclude that the proper course is to remand for further proceedings on this point.


   B.  Retaliatory Discharge

   Finally, Johnson argues that she was the subject of a retaliatory discharge in violation of Title VII. She maintains that Williams's incessant harassment and subsequent denials rendered her emotionally unstable. It was this instability, she says, that caused her to slap him. Because the harassment was causally connected to the assault, she concludes, the VA should not be able to use the assault as a legitimate reason for firing her.

   Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act. 42 U.S.C. sec. 2000e-3(a). To make out her retaliation claim, Johnson must establish that: (1) she engaged in statutorily protected

expression; (2) her employer took adverse action against her; and (3) the protected expression and the adverse action are causally linked. Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1038 (7th Cir. 1998); Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 869 (7th Cir. 1995). The burden then shifts to the VA to articulate a legitimate, nondiscriminatory reason for Johnson's discharge. Parkins, 163 F.3d at 1038-39. Johnson, however, bears the ultimate burden of persuasion that the VA's proffered reason is not merely a pretext for discrimination. Id. at 1039. One of the ways in which Johnson can so demonstrate is to show that the VA's decision was more likely than not motivated by discriminatory animus. Dunning, 62 F.3d at 869.

Here, Johnson introduced evidence supporting the three required elements of her retaliation claim. The district court rejected it because it found that the VA articulated a legitimate, nondiscriminatory reason for her discharge: Johnson was fired because she broke a department rule against assaulting one's superiors. On first glance, this apparent lack of discriminatory intent dooms any claim of pretext. However, one means of demonstrating pretext is to put forth evidence that employees outside the protected class who were involved in misconduct of comparable seriousness were not subject to similar adverse employment action. Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 770 (7th Cir. 1994). In this case, a fact finder might conclude discrimination was present if it compared the actions the VA took against Johnson with the actions it took against Williams. Although their acts of misconduct were not identical, they are comparable in that both involved unwanted, harmful physical contact. Cf. id. at 771 (distinguishing falsification of records from alcohol-related misconduct). Johnson's single strike to Williams's face may have caused more physical pain (though that is questionable--the parties characterize Johnson's act differently. Williams claims she punched him, leaving his face bruised, while Johnson avers that she slapped him) but his repeated acts of sexual touching caused Johnson severe emotional and psychological harm, and, for all we know, equivalent physical discomfort. After all the dust had cleared, Johnson--the victim of the harassment--had been fired and Williams--the perpetrator--was renamed to the position of Chief of Police.

On this point as well, we find the district court's legal analysis incomplete. In the abstract, we have no quarrel with the idea that an employer need not tolerate employees who go around resolving their problems with physical assaults, however frustrating the established complaint channels may be. Cf. Staples v. City of

Milwaukee, 142 F.3d 383 (7th Cir. 1998). Nevertheless, the assault happened in close conjunction with the VA's processing of her harassment grievance, and the record does not explain why the VA treated Johnson so much more harshly than it treated Williams, nor does it reveal how the VA handled similar problems in the past. This point too will require further proceedings on remand.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.