Mellissa **KOLPIEN** and Todd Kolpien, **Plaintiffs**,

and

Unity Health Plans Insurance Corporation, **Involuntary Plaintiff**,

v.

**FAMILY DOLLAR STORES OF WISCONSIN, INC.,** Defendant.

No. 04–C–907–C.

United States District Court, W.D. Wisconsin.

Nov. 28, 2005.

974

Dale E. Hughes, Robert E. Neville, WI, for Plaintiffs.

Shelly A. Ranus, Gonzalez, Saggio & Harlan, Milwaukee, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

From June to September 2002, plaintiff Mellissa Kolpien was sexually harassed by her supervisor while working at a Family Dollar store in Mauston, Wisconsin. On the same day she reported the harassment to a superior, defendant Family Dollar Stores of Wisconsin fired the supervisor. Two weeks later, plaintiff quit her job. In this civil action for monetary relief, she is suing defendant for sexual harassment, retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e and Wisconsin's Fair Employment Act, Wis. Stat. §§ 111.31–111.395. In addition, plaintiff Todd Kolpien has asserted a claim for loss of consortium and involuntary plaintiff Unity Health Plans Insurance Corporation has asserted a cross-claim against the Kolpiens for Mellissa Kolpien's medical expenses in the amount of $2,044.68. Jurisdiction is present. 28 U.S.C. §§ 1331, 1367.

Presently before the court are defendant's motion for summary judgment with respect to the sexual harassment, constructive discharge, retaliation and loss of consortium claims and plaintiff Todd and Mellissa Kolpien's motion to strike three paragraphs in the affidavit of Monica Marchildon. For the reasons stated below, defendant's motion will be granted in part and denied in part. I will grant the motion with respect to plaintiff's constructive discharge claims under state and federal law because there is no evidence from which an inference could be drawn that plaintiff's decision to quit her job was an

appropriate response to an intolerable work environment. Defendant's motion will be denied with respect to plaintiff's sexual harassment claims because a reasonable jury could conclude that plaintiff was subject to a hostile work environment and that there is a basis for holding defendant liable. Defendant's motion will be denied with respect to plaintiff's retaliation claims because a reasonable jury could conclude that defendant subjected plaintiff to adverse employment actions when it did not promote her to store manager and when her job duties were taken away from her after she reported her supervisor's harassment. Finally, defendant's motion will be denied with respect to plaintiff Todd Kolpien's claim of loss of consortium.

Before setting out the undisputed facts, I will address plaintiffs' motion to strike. Plaintiffs argue that ¶¶ 4–6 of Monica Marchildon's affidavit should be stricken because they contain "hearsay and generalized conclusory statements." Motion to Strike, dkt. # 44. Plaintiffs' motion will be denied but I will consider their arguments in determining whether any proposed findings of fact that rely on ¶¶ 4–6 of the affidavit are supported by admissible evidence.

■ As a final note, defendant fails to understand its obligation to respond to additional facts contained in plaintiffs' response to defendant's proposed findings of fact. In replying to some of plaintiffs' responses, defendant states merely that plaintiffs' response adds additional facts. It does not attempt to dispute them. Apparently, defendant believes that it need not respond to additional facts proposed in plaintiffs' responses. This is incorrect. The non-movant may propose findings of fact in its own set of proposed findings and in its responses to the movant's proposed findings of fact. Just because a proposed finding is located in the non-

movant's response does not mean it will be disregarded. If the proposed fact is properly and sufficiently supported by admissible evidence and not disputed by the movant, the court will accept it as undisputed. *Procedures to be Followed on Motions for Summary Judgment,* II.E.2 (court will not consider "factual propositions made in response to the movant's proposed facts" unless they are supported by admissible evidence). Defendant's assertion that no answer is needed is insufficient to put into dispute the additional facts in plaintiffs' responses.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

At all times relevant, plaintiffs Mellissa Kolpien and Todd Kolpien were residents of the state of Wisconsin. (All future references to "plaintiff" will refer to Mellissa Kolpien unless otherwise specified.) Defendant Family Dollar Stores of Wisconsin, Inc. is a corporation authorized to do business in Wisconsin. It operates a number of retail stores throughout Wisconsin. At all times relevant, plaintiff was employed by defendant at its retail store in Mauston, Wisconsin.

### B. *Defendant's Employment Practices and Policies*

Defendant has adopted a number of employment policies, procedures and practices in its retail stores concerning, among other things, sexual harassment and discrimination in the workplace. One of its policies is entitled "Policy on Harassment in the Workplace." It specifies types of conduct that violate the policy and instructs employees how to report an incident of sexual harassment. According to the policy, defendant will address com-

plaints as discreetly and confidentially as possible. Defendant assures employees that it will investigate each complaint, take disciplinary action when appropriate and not retaliate against employees who file complaints.

In addition to the harassment policy, defendant's employee handbook contains a provision relating to harassment and describes an "Open Door" policy, encouraging employees to discuss job-related matters with supervisory personnel. If an employee is not satisfied with supervisory staff, he can turn to defendant's Human Resources Department for assistance. However, defendant did not inform employees that they could bypass immediate supervisors to complain about harassment from the supervisors. Although it was customary for new employees at the Mauston store to receive a copy of the employee handbook, plaintiff did not receive one.

Several posters addressing harassment were posted in the Mauston store. A poster bearing the phrase "Sexual Harassment is Illegal" was available for posting in the Mauston store in 2002. It contained the same information as defendant's "Policy on Harassment in the Workplace" and a telephone number for defendant's Human Resource Service Center for reporting harassment. (Plaintiff does not recall seeing this document posted in the store.) Two other posters were displayed in the Mauston store: one stating that sexual harassment was a violation of federal and state law and another entitled "Alertline!" that made no specific reference to harassment but described a method for reporting any type of business abuse and provided a toll free telephone number that was available 24 hours a day, 7 days a week. (Plaintiff does not recall seeing the "Alertline!" poster in the Mauston store at any time during her employment.)

Defendant's internal policy governing harassment authorized seven channels through which complaints could be lodged. According to the internal policy, reports of harassment could be made to a store manager or anyone higher in the chain of command. A member of management who received a report was to notify the Employee Relations department immediately to determine if an investigation was warranted. At all times relevant, it was defendant's policy and practice that store managers were to forward reports of harassment up the chain of command.

### C. Tom Cruz and Rose Hazel

Tom Cruz began working for defendant as a stocker at the Mauston store in October 2000. In February 2001, Larry Littel, who was employed as a district manager with responsibility for the Mauston store, promoted Cruz to the position of store manager. District managers attended seminars on harassment. Store managers did not. They received no formal training with respect to sexual harassment but were required to read defendant's sexual harassment policy.

In April 2001, Cruz hired Rose Hazel as the store's assistant manager. At the start of her employment, she believed that she had a good working relationship with Tom Cruz. Her opinion changed soon after because Cruz began asking her to do things unrelated to her job, such as lie to his fiancée. Also, Cruz had problems managing his anger. He embarrassed Hazel by reprimanding her in front of customers.

Cruz engaged in other behavior that made Hazel uncomfortable. For example, she observed him following female customers around the store. He made innuendos about women in general and "would go into little rampages." Hazel Dep., dkt. # 21, at 14. He made remarks about the breasts and private parts of female em-

ployees, including plaintiff and female customers, and about what he "would like to do to them." *Id.* He propositioned Hazel sexually on many occasions. Within six months after Hazel began working at the Mauston store, Cruz asked her to come into his office and remove her clothes. On another occasion, Hazel found a television and sex videos in Cruz's office. On one occasion, she arrived at work and found blankets, pillows and Cruz's girlfriend in the storeroom. On another occasion, Cruz closed a door and "flew into" her, making contact with her entire body. *Id.* at 15. After Hazel gave Cruz her two-week notice, he told her that he was going to take her into the back room and rape her. She transferred from the Mauston store to defendant's store in Adams, Wisconsin in May 2002 because of the unfriendly work environment created by Cruz's harassment of customers and employees.

Hazel received a copy of defendant's sexual harassment policy during her employment. After reading it, she understood that an employee who believes he was being subjected to verbal or physical harassment could notify the vice president of Human Resources in defendant's corporate office. Also, she received a copy of the employee handbook and believed that other employees received them as well, although she was not involved in distributing them.

Although she knew that she could report any concerns she had regarding Cruz's conduct to management personnel, she did not make any report while she worked at the Mauston store. Larry Littel had encouraged her to contact him if she had any problems at the Mauston store. She did not do so because she believed that Littel and Cruz were friends and that they had watched sex videos together in Cruz's office. Instead, in May 2002, she reported the sexual harassment to Trisha Johannes, the manager of the Adams store. Johannes promised to take care of the harassment but did not report Hazel's complaint to upper management because she believed that Hazel had already reported it to Littel. Around this time, Johannes did report another harasser to upper management. Defendant did not investigate Hazel's complaint.

### D. *Plaintiff Begins Work at the Mauston Store*

Defendant hired plaintiff to work in the Mauston store in July or August 2001, initially as a cashier. At that time, Cruz was store manager and Hazel was assistant manager. During the time Hazel and plaintiff worked together, they did not discuss Cruz's habit of following customers around the store, his comment about wanting Hazel to remove her clothes or the incidents in which he told Hazel that he wanted her to come to his house after work and "fuck him" and grabbed her buttocks. Plaintiff was unsure of the relationship between Cruz and Hazel. She was not afraid of Cruz while Hazel worked at the store.

Plaintiff was promoted to assistant manager in December 2001. Cruz was still the store's manager. Shortly after her promotion, plaintiff spoke with district manager Larry Littel because she was unhappy with the training she was receiving from Cruz. This was the only time plaintiff spoke with Littel during her employment.

On January 27, 2002, Cruz gave plaintiff the second page of defendant's policy prohibiting harassment in the workplace. However, she did not have an opportunity to read the policy because he wanted her to sign it and some other personnel documents quickly to complete the paperwork in her personnel file before Littel arrived at the store. Also, plaintiff signed a document entitled "Acknowledgment of Major Company Policies" that indicated that the

signer had been given a copy of the employee handbook. Plaintiff never received a handbook and never asked for one during her employment. She did not receive a copy of any of the documents she signed on January 27, including the harassment policy.

### E. Cruz's Harassment of Plaintiff

After Rose Hazel left the Mauston store in May 2002, Cruz began sexually harassing plaintiff. He sexually harassed her from June to September 2002. On multiple occasions, he grabbed or slapped her buttocks with his hands. He told her that he would like to have sex with her in the storeroom and that they could lock the storeroom doors so no one would know. He offered to show his penis to her. He asked her about the size of her breasts and whether she was wearing a thong. Also, he made vulgar verbal comments to her including details of his sexual relations with women and his desire to have sex with customers. On one occasion, plaintiff noticed a pornographic magazine lying on the back of the toilet in the employee restroom. When she confronted Cruz about it, he laughed and said that he "was so horny when he got to work, he just had to jack off." In September 2002, he telephoned her at home and asked if he "could come over and tit fuck her." On one occasion, Cruz accosted plaintiff in the store's parking lot.

During this time, plaintiff did not investigate how to report Cruz's behavior or look for any posted notices at the store regarding the steps that she should take. She did not report Cruz's unwelcome sexual conduct to any executive, manager or supervisor employed by defendant until September 10, 2002. She was afraid to report Cruz because she feared losing her job and knew of his violent temper and his threat of physical harm against Rose Hazel. Also, she did not believe it would do

any good to make a report because defendant had not done anything in response to Hazel's complaint.

Plaintiff Todd Kolpien learned of the harassment when plaintiff Mellissa Kolpien told him that Cruz touched her breasts and buttocks and made comments about her underwear and her chest. Although surprised and upset by these revelations, plaintiff Todd Kolpien did not tell his wife to seek help from defendant's management and did not contact anyone employed by defendant about Cruz's conduct.

### F. Defendant's Response to Cruz's Harassment

On September 10, 2002, Patrick Sirianni and Steve Lowery were conducting an inventory of a Family Dollar store in Wisconsin. Sirianni had started his employment with defendant as a store manager in 2001 and was later promoted to district manager of an area that included the Mauston store. Plaintiff telephoned Sirianni and reported that she was being sexually harassed by Cruz. Concerned about her allegations, Sirianni went directly to the Mauston store. (At that time, Lowery had replaced Sirianni as district manager with responsibility for the Mauston store. However, plaintiff felt more comfortable discussing her allegations with Sirianni because she had met Sirianni three or four times but Lowery only once.) When Sirianni arrived, neither plaintiff nor Cruz were at the store. Sirianni called plaintiff and told her to come to the store, where he took statements from her and Sandra DeLorenzo, another employee. Sirianni was supportive of plaintiff and made her feel comfortable. When Cruz returned to the store, Sirianni interviewed him and took a written statement. Cruz admitted that plaintiff's allegations were true. He admitted touching her buttocks and telling her that he wanted to have sex with her.

Sirianni fired Cruz immediately and notified plaintiff of this action.

In his tenure as district manager with responsibility over the Mauston store, Larry Littel visited it once every one or two months. It was not his policy to call Cruz between visits. Littel was unaware of any discrimination claims against defendant. The only complaints he received from employees at the Mauston store in 2001–02 concerned staff shortages. From 2000–2002, Littel did not receive any complaints of harassment from Mauston store employees or customers. During his employment, Sirianni knew of no complaint against Cruz or defendant other than plaintiff's.

### G. Plaintiff's Employment After September 10, 2002

Soon after Cruz was fired, a female employee named Melissa F. arrived at the Mauston store and began working with plaintiff to manage the store. In mid-September, Melissa F. took away all supervisory duties from plaintiff and DeLorenzo. Plaintiff's store keys were confiscated and she was no longer allowed to count drawers, order products, make deposits and change runs at the bank, process truck orders, make work schedules for employees or complete other paperwork. In effect, she was demoted to a cashier, although her salary and working hours were not reduced. Melissa F. never told plaintiff that she had been demoted. Plaintiff did not file a complaint against Melissa F. about the change in her work duties.

On September 19, 2002, defendant received a death threat from Cruz against plaintiff and the other employees at the Mauston store. Three supervisors told plaintiff that it was a general threat and that she had nothing to worry about. No one told plaintiff that she had been named personally in the threat.

On September 24, 2002, Lowery interviewed plaintiff for the manager position at the Mauston store. She had not been employed in a managerial position before her employment with defendant. During the interview, Lowery decided that plaintiff was not ready to be the store's manager at that time. Although plaintiff had received training and had performed almost all of the duties of a store manager between January and September 2002, Lowery believed that Cruz had not properly trained her and that the Mauston store did not meet defendant's standards. The interview was brief; Lowery told plaintiff that he knew who was going to be offered the position. However, he believed that plaintiff "had what it took" to become a store manager in the future. He told her that more Family Dollar stores would be opening in the future and that he would consider making her manager of one of them. The person hired by Lowery to manage the Mauston store had twenty years of retail management experience. Lowery considered him to be the most qualified candidate for the position. He told plaintiff that he did not want her to think she was not getting the job because she had reported Cruz's sexual harassment.

Plaintiff was upset at the end of her meeting with Lowery. She requested and was granted permission to go home. Instead, she went to the Mauston Police Department to obtain a copy of the police report concerning the threats made by Cruz. After obtaining the police report, plaintiff decided to quit her employment with defendant and had her husband turn in her key. She did not speak with anyone employed by defendant to inform them that she was quitting. She did not ask the police department for security around her home and did not contact any private security company to provide security around

her home. Other than getting up 8 or 9 times each night to check that the doors were locked, plaintiff did nothing to increase security at her home. She did not change the locks or the windows. After reading the police report concerning Cruz's threat against his wife, plaintiff Todd Kolpien did not contact the Mauston store or the Mauston Police Department. He never advised his wife to ask defendant or the police department for additional security.

Before plaintiff resigned, defendant did not take any steps to change or increase security for its employees.

## OPINION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *O'Neal v. City of Chicago*, 392 F.3d 909, 910 (7th Cir.2004). In ruling on a motion for summary judgment, the court must construe the evidence, resolve factual disputes and draw reasonable inferences in the light most favorable to the non-movant. *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir.2002).

Plaintiff has asserted claims of constructive discharge, sexual harassment and retaliation under Title VII of the Civil Rights Act and the Wisconsin Fair Employment Act. It is appropriate to look to federal case law interpreting Title VII for guidance in interpreting the Wisconsin Fair Employment Act. *Marten Transport, Ltd. v. Dept. of Industry, Labor and Human Relations*, 176 Wis.2d 1012, 1020, 501 N.W.2d 391, 395 (1993) (constructive discharge); *Jim Walter Color Separations v. Labor and Industry Review Commission*, 226 Wis.2d 334, 346, 595 N.W.2d 68, 74 (1999) (hostile environment created by sexual harassment); *Kannenberg v.* *Labor and Industry Review Commission*, 213 Wis.2d 373, 395–96, 571 N.W.2d 165, 176 (1997) (retaliation). Plaintiff has not suggested that there are any relevant differences between the Wisconsin Fair Employment Act and Title VII for the purpose of this case. Therefore, plaintiff's claims under Wisconsin law will rise or fall with her federal discrimination claims.

### A. Sexual Harassment

Courts have long recognized that employers may be responsible for sexual harassment in the workplace under Title VII. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751–55, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). To survive summary judgment on a claim of sexual harassment based on a hostile work environment, plaintiff must present evidence from which a jury could conclude that she was (1) subjected to unwelcome sexual conduct, advances or requests (2) because of her sex (3) that were severe or pervasive enough to create a hostile work environment and (4) there is a basis for employer liability. *Racicot v. Wal–Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir.2005); *Rhodes v. Illinois Dept. of Transportation*, 359 F.3d 498, 505 (7th Cir.2004). For the purpose of its motion for summary judgment, defendant assumes that plaintiff can satisfy the first three prongs of this test. Dft.'s Br., dkt. # 26, at 31. It argues that she cannot establish a basis for holding defendant liable.

### 1. Standard for employer liability

"An employer's liability for hostile environment sexual harassment depends upon whether the harasser is the victim's supervisor or merely a co-employee." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998). In this case, the harasser, Cruz, managed the Mauston store at which plaintiff worked as

a cashier and assistant manager. The parties assume that Cruz was plaintiff's "supervisor" for the purpose of Title VII. In *Burlington Industries,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court set out the standard that governs employer liability for harassment perpetrated by a supervisor.

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment.

*Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. Under this standard, the first question is whether Cruz's harassment of plaintiff culminated in a tangible employment action.

### 2. *Tangible employment action*

 According to the Supreme Court, a tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 144, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (quoting *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257). Plaintiff identifies two events that could constitute a tangible employment action: defendant's failure to promote plaintiff to the position of store manager and the removal of her managerial responsibilities.

However, the undisputed facts indicate that neither of these events constituted a tangible employment action because neither event was the culmination of Cruz's harassment. Defendant fired Cruz on September 10, 2002. Two weeks later, defendant interviewed plaintiff for the store manager position. Steven Lowery, the district manager who interviewed candidates for the position, made the decision not to promote plaintiff. There is no evidence that Cruz was involved in this decision. With respect to the removal of plaintiff's managerial responsibilities, it is undisputed that an employee named Melissa F. was responsible for that action and that it occurred after Cruz had been fired. Plaintiff has not alleged that Cruz was involved in this decision either. In sum, plaintiff has not established a causal connection between either event and Cruz's sexual harassment. *Jaudon v. Elder Health, Inc.,* 125 F.Supp.2d 153, 161 (D.Md.2000). Therefore, the two events do not qualify as tangible employment actions under *Ellerth* and *Faragher. Murray v. Chicago Transit Authority,* 252 F.3d 880, 888 (7th Cir.2001) (employee failed to tie unfavorable decisions to sexual harassment). *See also Durkin v. City of Chicago,* 341 F.3d 606, 611 (7th Cir.2003) (employer liable for supervisor sexual harassment "only if the harasser took a tangible employment action *as part of his harassment*.") (emphasis added); *Johnson v. West,* 218 F.3d 725, 731 (7th Cir.2000) ("An employer is vicariously liable for tangible employment actions undertaken *by the harassing supervisor*.") (emphasis in original). The lack of a connection between the harassing behavior and either

adverse action distinguishes the present case from cases like Cooke v. Stefani Management Services, Inc., 250 F.3d 564 (7th Cir.2001), in which the court of appeals found a tangible employment action where the general manager of a restaurant sexually harassed a bartender and then fired him after he objected.

A third action could constitute a tangible employment action: plaintiff's decision to quit her job, which she characterizes as a constructive discharge. Recently, the Supreme Court held that a constructive discharge prompted by supervisor harassment may qualify as a tangible employment action for the purpose of the standard announced in *Ellerth* and *Faragher*. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Therefore, it is necessary to examine whether plaintiff has presented a triable claim of constructive discharge.

"A constructive discharge occurs when an employee resigns his or her current position because the employee considers the conditions intolerable and a reasonable employee also would have found the conditions made remaining in the job unbearable." *Robinson v. Sappington*, 351 F.3d 317, 336 (7th Cir.2003). The working conditions "must be even more egregious than the high standard for hostile work environment." *Tutman v. WBBM–TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir.2000). A plaintiff presenting a hostile environment constructive discharge claim "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Suders*, 542 U.S. at 147, 124 S.Ct. 2342. Moreover, to qualify as a tangible employment action, the constructive discharge must occur in response to a supervisor's official act. *Id.* 140–41, 124 S.Ct. 2342.

Defendant has conceded that Cruz's harassment of plaintiff from June to September 2002 was serious enough to create a hostile work environment. Plaintiff contends that her working conditions became unreasonably intolerable because she did not receive the store manager position, was relieved of her managerial responsibilities, was the subject of a death threat and because defendant did not inform her that she had been named personally in the threat and did not increase security. Plaintiff's failure to secure a promotion and her loss of job duties are irrelevant to the constructive discharge inquiry because they were not the product of unlawful discrimination. *Simpson v. Borg–Warner Automotive, Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) (quoting *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 886 (7th Cir.1998) (working conditions "must be intolerable because of unlawful discrimination.")). As noted above, Cruz had been fired by the time both of these events occurred and there is no evidence that he influenced either decision.

As for the death threat, the undisputed facts indicate that defendant received a death threat against plaintiff and the other employees at the Mauston store from Cruz on September 19, 2002. Again, this occurred after Cruz had been fired. Moreover, in plaintiff's interview on September 24, 2002, district manager Steven Lowery told her that she had potential to become a store manager in the near future. By the time plaintiff decided to quit her job, defendant had removed the individual responsible for creating the hostile work environment and expressed a desire to retain plaintiff as an employee. *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir.2004) (no constructive discharge where employee resigned months after resignation of superior who sexually harassed her). Cruz's death threat against plaintiff was made after he was fired. Although it

is reasonable to infer that the threat made plaintiff feel unsafe at work, there is no basis for imputing the threat to defendant. This distinguishes the present case from two other cases in which the Court of Appeals for the Seventh Circuit found a constructive discharge, *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188 (7th Cir.1992), and *Brooms v. Regal Tube Co.*, 881 F.2d 412 (7th Cir.1989). In *Taylor*, a supervisor made racially charged comments to a black salesperson, threatened him while holding a gun and later held a gun to his head. In *Brooms*, an employee was subjected to racially and sexually harassing comments by a human resources manager that culminated in the manager's grabbing her arm and threatening to kill her. In each case, the discriminatory conduct that led to the employee's resignation occurred while the persons responsible for it were still employed. The employees resigned in the face of hostile environments that still existed. That is not the situation in the present case.

In sum, the undisputed facts do not support an inference that plaintiff's decision to quit her job was "an appropriate response to an intolerable work environment." *McPherson*, 379 F.3d at 440. Therefore, I conclude that plaintiff was not constructively discharged from her employment. This conclusion means that plaintiff has failed to show that Cruz's harassment culminated in a tangible employment action. Accordingly, the two-pronged affirmative defense set out in *Ellerth* and *Faragher* is available to defendant.

### 3. *Affirmative defense*

 The first prong of the defense focuses on whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Ellerth*, 524 U.S. at 765, 118 S.Ct.

2257. As plaintiff notes, there are two components to this prong: prevention and prompt remedial action. A critical part of an employer's effort to prevent harassment in the workplace is its adoption of an anti-harassment policy and complaint procedure. *Id.* In this case, it is undisputed that defendant had adopted an anti-harassment policy that identified prohibited conduct and instructed employees how to report an incident of sexual harassment. Also, it is undisputed that defendant included in its employee handbook (1) an anti-harassment provision and (2) an "open door" policy encouraging employees to discuss job-related concerns with supervisory personnel and telling them to contact defendant's human resources department if they were dissatisfied with supervisory staff. In addition, a poster that explained defendant's sexual harassment policy and provided a telephone number to defendant's human resources department was available for posting at the Mauston store during 2002, although there is no evidence that this poster was displayed in the store. Two other posters were displayed at the store. One stated that sexual harassment was a violation of federal and state law and another described a method for reporting any type of business abuse were displayed at the store. Finally, it is undisputed that defendant's internal harassment policy authorized seven distinct channels through which complaints could be lodged. The policy required any member of management who received a complaint about harassment to forward the report to defendant's Employee Relations department. These undisputed facts indicate that defendant had established mechanisms to receive and process employee complaints concerning harassment.

 However, there are genuine factual disputes concerning whether defendant took reasonable steps to implement its pol-

icies. In *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275, the Supreme Court concluded that an employer could not be found to have exercised reasonable care in part because it "had entirely failed to disseminate its policy against sexual harassment among [ ] employees." In the present case, the parties dispute whether plaintiff received a copy of the employee handbook, which contained an anti-harassment policy and defendant's "open door" policy. Plaintiff contends that Cruz never gave her a handbook; defendant notes that she signed a document entitled "Acknowledgment of Major Company Policies," indicating her receipt of a copy of the handbook. A reasonable jury could believe plaintiff and conclude that she had not received a copy of the handbook and thus was unaware that she could file a complaint with defendant's human resources staff. Similarly, although plaintiff signed a copy defendant's anti-harassment policy, she contends that she did not have a chance to read the policy because Cruz had her sign it and other documents hurriedly because he needed to complete her personnel file. In addition, plaintiff avers that she never received a copy of the anti-harassment policy after she signed it. Also, plaintiff never saw a poster displaying defendant's anti-harassment policy at the Mauston store and defendant has not introduced evidence showing that the poster was actually displayed at the store during the time plaintiff was being harassed. Finally, there is no evidence that anyone below the level of district manager received sexual harassment training. It appears that plaintiff's ignorance of defendant's anti-harassment policies is primarily the result of Cruz's slipshod management. Also, it appears that defendant delegated to its store managers the responsibility of informing employees of its anti-harassment policies. Therefore, defendant must accept responsibility when one of its store managers fails in that task. From the facts presented, a reasonable jury could conclude that defendant did not exercise reasonable care in making plaintiff aware of its anti-harassment policies and complaint procedures.

■ Moreover, the existence of a harassment policy "does not necessarily establish that the employer acted reasonably in remedying the harassment after it has occurred or in preventing future misconduct." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 953 (7th Cir.2005). "'An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made.'" *McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473, 480 (7th Cir.1996) (quoting *Brooms*, 881 F.2d at 421). It is undisputed that, the same day plaintiff complained about Cruz's harassment to Sirianni, he launched an investigation and terminated Cruz's employment. Without doubt, the prompt investigation and termination were reasonably calculated to prevent further harassment. *Cerros*, 398 F.3d at 954 ("Our cases recognize prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action.").

■ The twist in this case is that there are facts suggesting that defendant had notice that Cruz was a harasser *before* he began harassing plaintiff but failed to take appropriate remedial action. *Id.* at 952 ("At bottom, the employer's knowledge of the misconduct is what is critical, not how the employer came to have that knowledge."). As plaintiff notes, Rose Hazel told store manager Trisha Johannes in May 2002 that Cruz had sexually harassed her. (Cruz began sexually harassing plaintiff in June 2002.) Although the par-

ties dispute how much detail Hazel provided and whether she completed a sexual harassment form when she talked with Johannes, it is undisputed that Johannes promised to take care of the harassment but failed to report it to upper management despite being obligated to do so by defendant's internal procedures. (It is unclear what Johannes did in response to Hazel's complaint. The parties dispute whether she spoke with Cruz about his behavior on the telephone.) It is irrelevant what her reason was for failing to pass on Hazel's complaint. What matters is that she did not report it and defendant failed to investigate Hazel's complaint. In light of defendant's immediate termination of Cruz when plaintiff informed Sirianni that she had been harassed, it is reasonable to infer that if Hazel's complaint had reached upper management in May 2002, Cruz may have been disciplined or terminated before he began harassing plaintiff. In sum, even though Cruz was fired the same day that plaintiff reported his harassment, there is enough evidence to allow a reasonable jury to infer that defendant did not use reasonable care to prevent and correct his harassing behavior before his termination. Defendant has not shown the absence of a genuine issue of fact with respect to the first prong of the *Ellerth/Faragher* affirmative defense. Therefore, its motion for summary judgment must be denied with respect to plaintiff's sexual harassment claim.

■ Even if the facts showed clearly that defendant had used reasonable care, defendant would not be entitled to summary judgment with respect to plaintiff's sexual harassment claims because it has failed to carry its burden with respect to the second prong of the affirmative defense. The second prong focuses on the employee's efforts to "take advantage of any preventive or corrective opportunities

provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. Under this prong, defendant has the burden to show not only that plaintiff failed to act but that her failure was unreasonable under the circumstances. *Johnson,* 218 F.3d at 732.

It is undisputed that plaintiff did not report Cruz's harassment until September 10, 2002, even though it began in June of that year. Moreover, it is undisputed that plaintiff spoke with district manager Larry Littel shortly after her December 2001 promotion to assistant manager because she was disappointed with the training being provided by Cruz. Also, defendant notes that plaintiff made no effort to find out how to report Cruz's behavior. From these facts, defendant argues that no reasonable jury could conclude that plaintiff made a "concerted effort" to inform defendant that Cruz was harassing her. *Silk v. City of Chicago,* 194 F.3d 788, 807 (7th Cir.1999).

At first blush, defendant's argument is compelling. However, this is not a case in which an employee's failure to report harassment meant that the employer was completely unaware that a problem existed. As explained above, another employee complained about Cruz's behavior before he began harassing plaintiff. Therefore, the importance of plaintiff's failure to report until September 2002 is somewhat mitigated. In addition, plaintiff argues that her failure to report earlier was reasonable because she feared that she would lose her job or that Cruz might react violently towards her. As noted above, the parties dispute whether Trisha Johannes telephoned Cruz after Rose Hazel told her that Hazel had been sexually harassed by Cruz. Defendant denies that any conversation between Johannes and Cruz took place. According to plaintiff, Johannes spoke with Cruz twice on this subject and

that, after the second conversation, Cruz threatened physical violence against Hazel. Moreover, plaintiff contends that she did not make a report because no action was taken against Cruz after Hazel's complaint.

The Court of Appeals for the Seventh Circuit has stated repeatedly that an employee's fear of retaliation does not relieve her of her duty to report harassment. *Gentry v. Export Packaging Co.,* 238 F.3d 842, 849 (7th Cir.2001) (citing *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 813 (7th Cir.1999)); *Hill v. American General Finance, Inc.,* 218 F.3d 639, 644 (7th Cir. 2000) (same). However, in another case, the court of appeals ruled that the reasonableness of an employee's failure to report was for a jury to decide. *Johnson,* 218 F.3d at 732. In that case, the chief of police at a veterans hospital sexually harassed his secretary, verbally abused her when he learned she was dating another man and threw mail in her face. All of this conduct led the secretary to experience substance abuse, depression and hallucinations, for which she consulted a therapist. The present case is different in that there is no evidence that Cruz's sexual harassment caused plaintiff to develop any psychological problems. Nonetheless, Cruz directed a series of crude sexual remarks at plaintiff, fondled her, accosted her at least once and told her he would like to have sex with her in the storeroom. Moreover, she contends that he reacted violently when informed of Rose Hazel's complaint, threatening to "kick the shit out of Rose" for reporting the harassment. A jury could conclude that her failure to report Cruz until September 2002 was reasonable in light of this threat.

Because there are material facts in dispute concerning both prongs of the *Ellerth/Faragher* affirmative defense, defendant's motion for summary judgment with respect to plaintiff's sexual harassment claims under Title VII and the Wisconsin Fair Employment Act will be denied.

## B. *Constructive Discharge*

In discussing whether plaintiff was subject to a tangible employment action for purposes of the *Ellerth/Faragher* standard for employer liability, I concluded that plaintiff was not constructively discharged from her employment with defendant. Therefore, I will grant defendant's motion for summary judgment with respect to plaintiff's constructive discharge claim.

## C. *Retaliation*

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 982 (7th Cir. 2004). Similarly, the Wisconsin Fair Employment Act provides that "it is an act of employment discrimination to ... discharge or otherwise discriminate against any individual because he or she has opposed any discriminatory practice under this subchapter." Wis. Stat. § 111.322(3). In her amended complaint, plaintiff alleges that defendant retaliated against her after she reported Cruz's harassment by denying her a promotion and demoting her.

An employee may pursue a retaliation charge in one of two ways: 1) the direct method, under which the employee must show that she engaged in a statutorily protected activity, suffered an adverse employment action and that a causal connection exists between the two, *Smith v. Northeastern Illinois University,* 388 F.3d 559, 567 (7th Cir.2004), or 2) the indirect method, which incorporates the burden shifting analysis in *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wyninger,* 361 F.3d at 981. Under the indirect method, plaintiff has the initial burden to establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, such as complaining about sex discrimination; (2) she was performing her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected conduct. *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.2002); *Stone v. City of Indianapolis,* 281 F.3d 640, 642 (7th Cir. 2002).

◼◼◼◼ Defendant argues that it is entitled to summary judgment with respect to plaintiff's retaliation claims because she did not suffer an adverse employment action after she reported Cruz's harassment to Sirianni on September 10, 2002. An adverse employment action is one that "materially alters the terms and conditions of employment." *Stutler v. Illinois Dept. of Corrections,* 263 F.3d 698, 703 (7th Cir. 2001). "Typically, adverse employment actions are economic injuries." *Markel v. Board of Regents of the University of Wisconsin System,* 276 F.3d 906, 911 (7th Cir.2002). However, economic injury is not a requirement. *E.g., Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir.1994) ("a dramatic downward shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action"); *Crady v. Liberty National Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993) (adverse action can include "significantly diminished material responsibilities"). Examples of adverse employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits." *Bell v. Environmental Protection Agency,* 232 F.3d 546, 555 (7th Cir.2000).

◼◼◼ As noted above, plaintiff contends that she was the victim of two retaliatory actions. The first, failure to promote, clearly constitutes an adverse action. Although there is considerable evidence in the record to suggest the lack of a causal connection between plaintiff's filing a harassment complaint and her failure to attain the promotion, defendant has not moved for summary judgment on that ground and it is not the job of this court to make a party's arguments for it. Given that plaintiff notes expressly in its brief that defendant raised only one ground in support of its motion with respect to plaintiff's retaliation claims, it would be unfair to grant defendant's motion on a ground it had not raised. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion"). Therefore, defendant's motion will be denied with respect to plaintiff's retaliation claim concerning plaintiff's failure to be promoted to the position of store manager.

◼◼◼ Plaintiff labels the second allegedly retaliatory action that befell her a "demotion." The undisputed facts indicate that soon after Cruz had been fired, an employee named Melissa F. began working with plaintiff to manage the Mauston store. Sometime in mid-September 2002, Melissa F. stripped plaintiff of several job duties, including counting drawers, ordering products and processing incoming freight, making transactions on the store's behalf at the bank, composing work schedules and completing other paperwork. According to plaintiff, her responsibilities were reduced essentially to those of a cashier. Defendant argues that plaintiff

was never demoted and points out that her salary, working hours and job title did not change and that no one employed by defendant told her that she had been demoted. Nonetheless, a reasonable jury could conclude that the removal of so many job duties constituted a significant diminution of plaintiff's responsibilities at the store. Because there is an issue of fact concerning whether the removal of plaintiff's job duties constituted an adverse employment action, defendant's motion for summary judgment with respect to plaintiff's retaliation claim will be denied.

### D. *Loss of Consortium*

Defendant argues that it is entitled to summary judgment with respect to plaintiff Todd Kolpien's loss of consortium claim because plaintiff Mellissa Kolpien has not established that she was subjected to a hostile work environment. However, defendant did not contest the fact that Cruz's harassment was severe enough to rise to the level of a hostile work environment and I have concluded that a reasonable jury could find a basis for employer liability. Therefore, I will deny defendant's motion as it relates to plaintiff Todd Kolpien's loss of consortium claim.

### ORDER

IT IS ORDERED that defendant Family Dollar of Wisconsin's motion for summary judgment is:

1. GRANTED with respect to plaintiff Mellissa Kolpien's claims of constructive discharge under Title VII and the Wisconsin Fair Employment Act;

2. DENIED with respect to plaintiff Mellissa Kolpien's claims of sexual harassment and retaliation under Title VII and the Wisconsin Fair Employment Act; and

3. DENIED with respect to plaintiff Todd Kolpien's claim of loss of consortium.

FURTHER, IT IS ORDERED that plaintiff's motion to strike is DENIED as unnecessary.